IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MEDISTAR TWELVE OAKS PARTNERS, LTD., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION H-09-3828 |
| AMERICAN ECONOMY INSURANCE COMPANY, et al., | § § § | |
| Defendants. | § § § | |

**OPINION AND ORDER**

Pending before the Court in the above referenced cause, arising out of an insurance claim by Plaintiff Medistar Twelve Oaks Partners, Ltd. ("Medistar") for damages to Medistar's commercial building and its contents caused by Hurricane Ike and removed from the 55th District Court of Harris County, Texas on diversity jurisdiction, are (1) Defendant Nelson Architectural Engineers, Inc.'s ("Nelson's") first motion to dismiss (instrument #4); (2) Defendants American Economy Insurance Company ("American Economy"), Liberty Mutual Insurance Company ("Liberty"), and Safeco Insurance Company of America's ("Safeco's")(collectively, "insurance company Defendants') motion to dismiss or, alternatively, for more definite statement (#5); and (3) Plaintiff Medistar Twelve Oaks Partners, Ltd.'s ("Medistar's") motion to remand (#10).

-1-

According to Medistar's Original Petition (Ex. A to #1, Notice of Removal), Medistar's commercial building was insured under an all-risk policy,[1] number 02-CE-188659-10, issued by American Economy and Safeco. Safeco is the parent and controlling entity of American Economy, while Liberty is the parent and controlling company of Safeco. Medistar submitted a claim[2] for damages to the insurance companies and states that it cooperated fully with their investigation. It alleges that American Economy, Safeco, and Liberty had an obligation in good faith and fair dealing to conduct an investigation and an evaluation of the benefits owed to Medistar and to promptly pay all benefits owed to Medistar. Among their good faith duties was an obligation to hire a sufficient number of qualified, properly trained adjustors, investigators and consultants to perform this work. Medistar complains that the insurance company Defendants hired Nelson for an "outcome oriented" and "dishonest" investigation of the cause of and resulting damages to Medistar's insured property. Medistar asserts that the insurance company Defendants have wrongfully failed or refused to pay Medistar's covered claims on a timely basis, but have persisted

---

[1] An "all-risks" policy is "one in which the insurer undertakes the risk for all losses of a fortuitous nature, which, in the absence of the insured's fraud or other intentional misconduct, is not expressly excluded in the agreement." *Lexington Insurance Co. v. Buckingham Gate, Ltd.*, 993 S.W. 2d 185 (Tex. App.--Corpus Christi 1999)(and cases cited therein).

[2] Assigned claim number 598799873017.

-2-

in delay or refusal to pay the full amounts due without giving honest reasons for their payment of an inadequate amount of benefits.  Medistar claims that it has been forced to hire its own engineers at its own expense and an attorney to represent it here. It charges Nelson with "misrepresent[ing] survey results during its investigation of Medistar's Insurance claim," putting "these misrepresentations in reports," and "attempt[ing] to manipulate changes to the survey results in a scheme to manufacture desired results which would lower claim payments" made by the insurance company Defendants.  Original Petition at ¶ 45.

Medistar sues the insurance company Defendants for breach of [insurance] contract, noncompliance with Section 542.055 (failure to pay claim within fifteen business days of receiving all required information) of the Texas Prompt Payment of Claims Act and Texas Insurance Code, Chapter 542, breach of common law duty of good faith and fair dealing, violations of Section 17.50 of the Texas Deceptive Trade Practices Act ("DTPA") and/or Chapter 541 of the Texas Insurance Code, fraud, and conspiracy to commit fraud. Medistar sues Nelson for fraud, conspiracy to commit fraud, and tortious interference with contract.[3]

The parties have blended arguments regarding remand with others relating to Rule 12(b)(6) dismissal, at times confusing the

---

[3] The same causes of action were pleaded against Wiss, Janney, Elstner Associates, Inc., but it was voluntarily dismissed on January 11, 2010 (#25).

standards for removal/remand with federal standards for adequate pleading of claims.  Therefore the Court summarizes the arguments in the motions together.  Nevertheless, because the motion to remand must be decided on the basis of the pleadings at the time of removal,[4] and not on any subsequent existing or proposed post-removal amendment, and because that Original Petition determines this Court's jurisdiction, the Court must address the motion for remand first.  The resolution of that motion will determine whether the Court has jurisdiction to consider the Rule 12(b)(6) motions to dismiss.

**Relevant Law**

Under 28 U.S.C. § 1441(a) any state court action over which federal courts would have original jurisdiction may be removed from state to federal court.  *Gasch v. Hartford Accident & Indemnity Co.*, 491 F.3d 278, 282 (5th Cir. 2007).  Moreover, under 28 U.S.C. § 1441(b), when original federal jurisdiction would be based on diversity, a defendant may remove a state court civil action only "if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

---

[4]     The right to remove depends upon the plaintiffs' pleading at the time of the petition for removal.  *Pullman Co. v. Jenkins*, 305 U.S. 534, 537-38 (1939); *Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d 256, 264 (5th Cir. 1995); *Ford v. Property & Cas. Ins. Co. of Hartford*, No. Civ. A. H-09-1731, 2009 WL 4825222, *2 (S.D. Tex. Dec. 9, 2009).

The doctrine of improper joinder, or fraudulent joinder,[5] prevents defeat of federal removal jurisdiction premised on diversity by the presence of an improperly joined, non-diverse defendant. *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009). Citizenship of an improperly joined party is totally disregarded in determining the court's subject matter jurisdiction. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004)(en banc), *cert. denied*, 544 U.S. 992 (2005).

Improper joinder may be established by showing (1) actual fraud in the pleading of jurisdictional facts or (2) an inability to establish a cause of action against the non-diverse defendant in state court. *Gasch*, 491 F.3d at 281; *Smallwood*, 385 F.3d at 573. The latter is alleged here. Defendants claiming improper joinder based on the second type bear a heavy burden of showing that there is no possibility of recovery by the plaintiff against the in-state defendant, i.e., in other words there is no reasonable basis for predicting that state law would allow recovery against the in-state defendant. *Smallwood*, 385 F.3d at 576. A "reasonable basis" means more than a mere a hypothetical basis. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999)("whether the plaintiff has stated a valid state law cause of action depends upon and is tied

---

[5] The Fifth Circuit prefers the term "improper joinder" to "fraudulent joinder" because it is more consistent with the statutory language in 28 U.S.C. §§ 1141 and 1332. *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 571 n.1 and 572-73 (5th Cir. 2004)(en banc), *cert. denied*, 544 U.S. 992 (2005).

to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery").

To determine whether a plaintiff has a "reasonable basis for recovery under state law, the court may "conduct a Rule 12(b)(6)-type analysis." *Smallwood*, 385 F.3d at 573; *Anderson v. Georgia Gulf Lake Charles*, 342 Fed. Appx. 911, 915 (5th Cir. 2009). First the court should look at the pleadings to determine whether the allegations state a claim under state law against the in-state defendant. *Smallwood*, 385 F.3d at 573. If the "plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," the court may look beyond the pleadings and consider summary judgment-type evidence. *Georgia Gulf*, 342 Fed. Appx. at 915-16. That discovery should be very restricted and the summary inquiry should be limited to identifying "discrete and undisputed facts that would bar a plaintiffs' recovery against an in-state defendant; anything more risks 'moving the court beyond jurisdiction and into the resolution of the merits . . . .'" *Id.* at 916, *quoting Smallwood*, 385 F.3d at 573-74. The court has the discretion to determine what procedure is necessary. *Smallwood*, 385 F.3d at 573.

The district court must resolve all contested fact issues and ambiguities of state law in favor of the plaintiff and remand. *Gasch*, 491 F.3d at 281, *citing Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005). The Fifth Circuit explains that

since "'the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns.' The removal statute is therefore to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Id.* at 281-82, *quoting Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365-66 (5th Cir. 1995).

*Fed. Rules of Civil Procedure 12(b)(6) and 9(b)*

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Kane Enterprises v. MacGregor (US), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003), *citing Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed.

-7-

2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").   "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974).  *See also Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, *14 (S.D. Tex. Jan. 31, 2008)."Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

Recently, in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009)(5-4), the Supreme Court, applying the *Twombly* plausibility standard to a *Bivens* claim of unconstitutional discrimination and a defense of qualified immunity for government official, observed that two principles inform the *Twombly* opinion: (1) "the tenet that

a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." . . . Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."; and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fraud claims must also satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b): "In allegations alleging fraud . . ., a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  A dismissal for failure to plead with particularity as required by this rule is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim.  *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).  The Fifth Circuit interprets Rule 9(b) to require "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent."  *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005).

The elements of a fraud claim are (1) the defendant made a representation to the plaintiff; (2) the representation was

material; (3) the representation was false; (4) when the defendant made the representation, the defendant a) knew that the representation was false or b) made the representation recklessly, as a positive assertion, and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *In re First Merit Bank*, 52 S.W. 3d 749, 758 (Tex. 2001).

To prevail on a conspiracy claim, the plaintiff must show (1) the defendant was a member of a combination of two or more persons; (2) the object of the combination was to accomplish a) an unlawful purpose or b) a lawful purpose by unlawful means; (3) the members had a meeting of the minds on the object or course of action; (4) one of the members committed an unlawful overt act to further the object or course of action; and (5) the plaintiff suffered injury as a proximate result of the wrongful act. *Tri v. J.T.T.*, 162 S.W. 3d 552, 556 (Tex. 2005); *Insurance Co. of North America v. Morris*, 981 S.W. 2d 667, 675 (Tex. 1998).

The pleading standards of *Twombly* and Rule 9(b) apply to pleading a state law claim of conspiracy to commit fraud. *U.S. ex rel. Grubbs v. Kanneganti*, ____ F.3d ____, No. 07-40963, 2009 WL 930071, *9 (5th Cir. Apr. 8, 2009)("a plaintiff alleging a conspiracy to commit fraud must 'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of

the conspiracy'"), *quoting FC Inv. Group LLC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008).

If Plaintiffs fail to state a claim for fraud underlying their civil conspiracy claim, the civil conspiracy claim must be dismissed, too. *Allstate Ins. Co. v. Receivable Finance, Inc.,* 501 F.3d 398, 414 (5th Cir. 2007); *American Tobacco Co., Inc. v. Grinnell*, 951 S.W. 2d 420, 438 (Tex. 1997)("Allegations of conspiracy are not actionable absent an underlying [tort]"); *Krames v. Bohannon Holman LLC*, No. 3:06-CV-2370-0, 2009 WL 762205, *10 (N.D. Tex. Mar. 24, 2009).

To prevail on a claim of tortious interference in an existing contract, a plaintiff must establish (1) the plaintiff has a valid contract; (2) the defendant willfully and intentionally interfered with the contract; (3) the interference proximately caused the plaintiff's injury; and (4) the plaintiff incurred damage or loss. *Butnaru v. Ford Motor Co.*, 84 S.W. 3d 198, 207 (Tex. 2002); *Prudential Ins. Co. v. Financial Rev. Servs.*, 29 S.W. 3d 74, 77 (Tex. 2000).

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161, 162 (5th Cir. 2001)("[W]hen considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the

allegations provide relief on any possible theory," *citing Cinel v. Connick*, 15 F.3d 1338, 1334 (5th Cir. 1994)), *cert. denied sub nom. Cloud v. U.S.*, 536 U.S. 960 (2002).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion. [citations omitted]").  The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its fact . . . ."  6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

When addressing a motion to remand, however, the controlling pleading is the viable one at the time of removal; post-removal amendments are not considered. *Pullman Co. v. Jenkins*, 305 U.S.

534, 537-38 (1939); *Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d 256, 264 (5th Cir. 1995).

## Pending Motions

The gist of Medistar's motion to remand is that there is no diversity jurisdiction here: Medistar is a Texas limited partnership, made of up partners who are all Texas citizens; Defendant Nelson is also a Texas citizen.[6]

Defendants contend that Nelson was fraudulently joined to defeat diversity.

In its response, Nelson incorporates its motion to dismiss, or alternatively, for more definite statement, and Nelson combines arguments for dismissal for improper joinder with dismissal for inadequate pleading of claims under Federal Rules of Civil Procedure 12(b)(6) and 9(b). With a supporting affidavit Nelson explains that it was hired not by Medistar, but by an agent of Medistar's insurer to evaluate Medistar's damage from Hurricane Ike and to provide engineering services relating to Medistar's claims. As part of its services, Nelson asserts that it submitted four true and accurate engineering reports about the damage observed at Medistar's commercial building, based upon site observations, field

---

[6] It is undisputed that the other Defendants are diverse from Plaintiff: American Economy Insurance Company is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Liberty Mutual Insurance Company is a Massachusetts corporation, with its principal place of business in Boston, Massachusetts.

information, measurements, verbal information, and Mr. Nelson's experience and structural analysis.  Nelson insists Medistar cannot establish a cause of action against it in state court, but in large part argues that Medistar fails to satisfy pleading standards for its causes of action against Nelson.

Nelson maintains that Medistar failed to plead specific facts to support its fraud and conspiracy to commit fraud claims, as required by Federal Rules of Civil Procedure 12(b)(6) and 9(b). Medistar charges that Nelson misrepresented its survey results and manipulated its results to cause lower payments by the insurers during its investigation of Medistar's insurance claim, but it does not identify the circumstances--the who, what when and where--to establish a fraud claim as to each defendant.  It makes only broad, blanket statements about all of them generally.  Medistar has also conceded that it did not rely on the representations made by Defendants, but instead relied on its own CEO and its own outside engineers to refute the reports and findings of Nelson.  The conclusory statements in the Original Petition fail to plead a viable claim for conspiracy because they are merely speculative and fail to identify a specific time or place in which any meeting of the minds occurred.

Nelson does maintain that Medistar's tortious interference

claim[7] against Nelson is not a viable cause of action in Texas against an independent engineer hired by an insurer to assist in the investigation absent a special relationship. *Dagley v. Haag Engineering Co.*, 18 S.W. 3d 787, 793-94 (Tex. App.--Houston [14th Dist.] 2000, no pet.), *citing Dear v. Scottsdale Ins. Co.*, 947 S.W. 2d 908 (Tex. App.--Dallas 1997)(holding that since there was no insurance contract and therefore no special relationship between the insured and an independent adjustor firm hired by the insured's insurance carrier, the adjustor firm owed no duty to the insured and is not liable to the insured for improper investigation, settlement advice, negligence, bad faith, breach of contract, tortious interference or DTPA claims), *overruled on other grounds, Apex Towing Co. v. Tolin*, 41 S.W. 3d 118, 122-23 (Tex. 2001). It is undisputed that Nelson did not have a contractual or other special relationship with Medistar at any time.

Nor, argues Nelson, does the pleading of the tortious

---

[7] Paragraph 128 contains the tortious interference claim against Nelson:

> Nelson interfered with Medistar's contract with American Economy, Safeco and Liberty Mutual by submitting fraudulent building surveys, reports, and sealed engineering drawings for the purpose of providing a misrepresentation for the investigation of Medistar's insurance claim that arose from Medistar's insurance contract with American Economy, Safeco, and Liberty Mutual. Nelson prepared building diagrams which were false and materially misrepresented in such a manner that would indicate Medistar's claims would be wrongfully denied or underpaid.

interference claim satisfy Rule 12(b)(6).  The Original Petition does not allege facts demonstrating that Nelson had an intent to interfere with the insurance contract between Medistar and the insurance company Defendants, how he interfered with it, that the interference proximately caused plaintiff's injury, or that Nelson actively participated in persuading the insurance company Defendants to breach its contract.  Instead the petition contains the kind of conclusory allegations and legal conclusions that Rule 12(b)(6) seeks to prevent.

Nelson also emphasizes that Plaintiff has failed to move for leave to amend to cure the problem, which has been pointed out in the two pending motions to dismiss.  Nelson claims that evidence outside of the pleadings demonstrates that there is no reasonable basis to predict that Plaintiff might recover against Nelson under theories of fraud and/or conspiracy to commit fraud.

Finally under the economic loss rule, "mere nonfeasance under a contract creates liability only for breach of contract" and therefore "'tort damages are generally not recoverable unless the plaintiff suffers an injury that is independent and separate from the economic losses recoverable under a breach of contract claim.'" *Crawford v. Ace Sign, Inc.*, 917 S.W. 2d 12, 13 (Tex. 1996); *Heil Co. v. Polar Corp.*, 191 S.W. 3d 805, 815 (Tex. App.-- Fort Worth 2006), *quoting Formosa Plastics Corp. USA v. Presidio Eng'rs &*

*Contractors, Inc.*, 960 S.W. 2d 41, 45-47 (Tex. 1998).[8]  *See also*

---

[8] Should Medistar assert that its fraud claim is excluded from the economic loss rule under *Formosa Plastics*, Nelson points out that the Texas Supreme Court in that case held that "tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff suffers an economic loss related to the subject matter of the contract." 960 S.W. 2d at 47.  If a plaintiff only asserts a claim for fraud and makes no allegation that it was fraudulently induced to enter into a contract, as here, *Formosa Plastics* does not apply and it is proper for the court to apply the economic loss rule to bar the fraud claim.  *Heil Co. v. Polar Corp.*, 191 S.W. 3d at 816-19; *Southwestern Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W. ed 470, 494-95 (Tex. 1992), *citing Jim Walter Homes, Inc. v. Reed*, 711 S.W. 2d 617, 618 (Tex. 1986).  The Texas Supreme Court subsequently clarified its opinion in *Formosa Plastics*:

> In *Formosa Plastics* we concluded that Presidio could bring a fraudulent inducement claim even though its damages consisted only of economic losses related to the performance and subject matter of the parties' contract. Some of our language in that opinion suggests that there is no distinction between a claim for fraud and fraudulent inducement.  Fraudulent inducement, however, is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof.  That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties.  *Formosa Plastics* involved a fraudulent inducement claim based on representations contained in the bid packet upon which Presidio based its contract offer, which resulted in a written contract between the parties.  Thus, the case was correctly decided as to fraudulent inducement.  Although economic losses may be recoverable under either fraud or fraudulent inducement, *Formosa Plastics* should not be construed to say that fraud and fraudulent inducement are interchangeable with respect to the measure of damages that would be recoverable. [citations omitted]

*R.E. Haase v. Glazner*, 62 S.W. 3d 795, 798-99 (Tex. 2001). Medistar's Original Petition asserts only a claim for fraud, and none for fraudulent inducement, and the fraud allegations arise out of the alleged breach of contract.  Thus, argues Nelson, Medistar's

*M.D. Thompson v. Espey Huston & Assoc., Inc.*, 26 S.W. 3d 103 (Tex. App.–Houston [14th Dist.] 2000, no writ)(holding that the negligence of an engineering firm, if any, in the performance of its inspections caused no injury to the owner beyond the economic loss to the subject of the contract under the economic loss rule). Nelson observes that although Medistar asserts tortious interference against Nelson and breach of contract against the other defendants, Medistar fails to demonstrate or allege that it has sustained a loss beyond the economic loss associated with the alleged delay in coverage under the insurance contract.

Last of all, Nelson insists that Medistar's claim for consequential damages must also be dismissed under Rule 12(b)(6) for failure to allege any facts that would show an entitlement to such damages. It is black letter law in Texas that a claimant can only recover damages that are a proximate cause of the injury sustained and of which the defendant has received fair notice. Therefore a plaintiff must plead sufficient facts to give the defendant fair and adequate notice of the damages sought. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W. 3d 887, 896-97 (Tex. 2000). Nelson argues that Medistar has failed to plead any facts that would put Nelson on notice as to the type of consequential

---

tortious interference with an existing contract, fraud, and conspiracy to commit fraud claims must be dismissed under Rule 12(b)(6) for failure to state a claim by application of the economic loss rule.

damages Medistar will seek.   Thus the claim for consequential damages must be dismissed under Rule 12(b)(6).

*Insurance Defendants' Response to Medistar's Motion to Remand and Their Motion to Dismiss or for More Definite Statement (#5)*

American Economy, Safeco, and Liberty respond to Medistar's motion to remand by complaining that Medistar did not plead any specific facts for its claims against Nelson, but instead erroneously argued that there could be no remand as long as Nelson could conceivably under some set of facts allege a cause of action against Nelson.[9]

They urge the Court to deny Medistar's motion to remand for three reasons: (1) Medistar's conclusory allegations fail to state a claim against Nelson; (2) Texas law does not permit Medistar to bring tort claims against Nelson, an independent engineer; or (3) the economic loss rule bars Medistar's tort claims against Nelson.

For the first reason, Medistar cites *Waters v. State Farm Mutual Automobile Ins. Co.*, 158 F.R.D. 107, 109 (S.D. Tex. 1994),

_____

[9] This Court observes that Medistar's argument invokes the old rule under *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], which has been abrogated in federal court by *Twombly*, 127 S. Ct. at 1965 ("Factual allegations must be enough to raise a right to relief above the speculative level" and plead a claim that is plausible on its face).  Moreover, as noted in *Smallwood*, "A 'mere possibility of recovery under local law" will not preclude a finding of improper joinder.'"   385 F.3d at 573 n.9, *quoting Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000).

in which this Court held that such conclusory allegations without factual basis are insufficient to state a claim against a non-diverse defendant and constitute fraudulent joinder. Medistar concedes that a proper fraudulent joinder analysis is made under Rule 12(b)(6), but it is well settled law that because Medistar made only conclusory allegations, it cannot survive such an analysis. This is especially true with respect to the fraud claim, which also fails to meet the particularity pleading standard of Rule 9(b). *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)(holding that conclusory allegations of fraud, without setting forth specific facts, are insufficient to survive a Rule 12(b)(6) analysis). In a typical statement, like the others devoid of facts and with legal conclusions masquerading as factual conclusions, Medistar alleged only that Nelson "made false statements, misrepresented material facts, and engaged in actions and/or omissions for the purpose of misleading Medistar as to the actual damages resulting from the peril of wind or the peril of storm surge or flood, and Medistar having relied upon such fraudulent conduct has been injured." Original Petition as ¶ 120. *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"). They emphasize that a fraud complaint should be filed only after a wrong is reasonably believed to have

occurred; it should serve to seek redress for a wrong, not find one. *Segal v. Gordon*, 467 F.2d 602, 607-08 (2d Cir. 1971). Thus Medistar's fraud allegations should be dismissed for failure to state a claim under Rule 12(b)(6). The insurance company Defendants also point out that in response to the Rule 12(b)(6) motions filed by the insurance company Defendants and Nelson, Medistar chose not to amend its petition or move for leave to amend or state any facts in its motion to remand or in its responses to the motions to dismiss, but chose to stand on its petition. Furthermore, they note that Medistar makes only two references to alleged misrepresentations by the insurance company Defendants: (1) that they "misrepresented to Medistar that the damage to property was not in excess to the amount paid as of the date of this complaint, even though the damage was caused by a covered peril and clearly in excess of previously paid amounts" (Original Petition ¶ 39); and (2) that the insurance company Defendants did not "offer Medistar adequate compensation without any honest explanations in writing or orally as to why additional payments were not being made" (*id.* at ¶ 40). Neither supports a fraud claim, and neither pleads the elements of fraud with the requisite particularity. Nor does Medistar allege specific facts to establish that each defendant individually committed fraud, but instead makes impermissibly broad, blanket statements pertaining to all defendants. *See, e.g.*, Medistar alleges that Safeco "through

-21-

its agents and employees, knowingly and with reckless disregard for Medistar in the course of handling of this subject claim made false statements, misrepresented material facts, and engaged in actions and/or omissions for the purpose of misleading Medistar as to the actual damages resulting from the peril of wind, and Medistar having relied upon such fraudulent conduct, has been injured." Original Petition, ¶¶ 67, 90, 113.  There is no identification of time, context, substance or speaker of the alleged false statements.

Insurance company Defendants also argue that because Medistar has failed to state a claim for fraud, its conspiracy to commit fraud claim also fails and should be dismissed.  In addition, they contend that the conspiracy claims are also vague and conclusory allegations, not stated with particularity, including a specific time or place in which there was any meeting of the minds. Alternatively, the conspiracy claims should be dismissed under the "intra-corporate conspiracy rule," which states that in the case of a corporation, "the acts of a corporate agent are the acts of the corporation, and a corporation cannot conspire with itself." *Elliott v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996); *Wilhite v. H.E. Butt Co.*, 812 S.W. 2d 1, 5 (Tex. App.--Corpus Christi 1991, no writ)("As a matter of law, a corporation or other company cannot conspire with itself, no matter how many of its agents participated in the complained of action,").

-22-

The insurance company Defendants, too, urge that the conspiracy to commit fraud claims against Nelson cannot not survive a Rule 12(b)(6) analysis because they also are conclusory. Original Petition at ¶¶ 123-25. Rule 9(b)'s requirement of particularity also applies to the allegations of conspiracy to commit fraud. *In re Enron Corp. Securities, Derivative and ERISA Litig.*, 623 F. Supp. 2d 798, 811 n.11 (S.D. Tex. 2009).

Medistar's tortious interference claims also do not survive a Rule 12(b)(6) analysis because of conclusory nature of all the allegations, insist Defendants. *See Nabors Drilling U.S.A. L.P. v. Twister Exploration, L.L.C.*, No. Civ. A. 01-2109, 2002 WL 1610957, *2-3 (E.D. La. July 18, 2002)(granting renewed motion for Rule 12(b)(6) dismissal because plaintiff pleaded only conclusory allegations of tortious interference).

As for the second reason for denying remand, like Nelson the insurance company Defendants argue that Texas law does not allow an insured to assert tort claims against independent engineer Nelson. *Dagley*, 18 S.W. 3d 787. That bar applies not only to negligence and implied duty of good faith and fair dealing, but to tortious interference and conspiracy claims. *Id.* Although the rule originally arose to preclude a breach of good faith and fair dealing cause of action against an insurance adjuster *(Natividad v. Alexsis, Inc.*, 875 S.W. 2d 695, 698, 700 (Tex. 1994)(in the absence of a contractual or special relationship between an agent or

contractor and an insured, it is the insurance carrier that is liable to the insured for the acts of its agents or contractors)), it was expanded to preclude all manner of tort claims alleged against adjusters, law firms, and engineering companies hired by an insurer to respond to claims. *Dear*, 947 S.W. 2d at 916 (holding that an independent adjusting firm, hired by an insurer to investigate the claim of an insured, has no special relationship with the insured); *Castillo v. Professional Serv. Indus., Inc.*, No. 04-97-00775-CV, 1999 WL 155833, *1-2 (Tex. App.--San Antonio March 24, 1999)(absent a special relationship, soil tester hired by an independent engineer, in turn hired by an insurance company to investigate a claim, does not owe a legal duty to the insured and "cannot be held liable as a matter of law, whether the claim is brought under the Texas Insurance Code, the DTPA, intentional infliction of emotional distress, conspiracy to commit fraud, or tortious interference with contractual relations."); *Dagley*, 18 S.W. 3d at 791-92 (dismissing multiple tort claims of negligence, DTPA, Insurance Code violations, tortious interference and civil conspiracy against independent engineering firm hired by insurer); *Muniz v. State Farm Lloyds*, 974 S.W. 2d 229, 235-37 (Tex. App.--San Antonio 1998, no pet.), *citing Bui v. St. Paul Mercury Ins. Co.*, 987 F.2d 204, 210 (5th Cir. 1993)(applying Texas law and dismissing tort claims against independent adjuster because adjuster owed no duty to insured).

-24-

As the third and final reason for denying the motion to remand, Texas law does not permit tort claims which allege merely the economic loss suffered by breach of the insurance policy, insist the insurance company defendants.  Agreeing with Nelson, the insurance company Defendants contend that under the economic loss rule, "tort damages are generally not recoverable unless the plaintiff suffers an injury that is independent and separate from the economic losses recoverable under a breach of contract claim." *Heil Co. v. Polar Corp.*, 191 S.W. 3d 805, 815 (Tex. App.--Fort Worth 2006, pet. denied).  Insurance company Defendants assert that Medistar acknowledges the rule, but tries to avoid it by stating that it "it will show additional independent extra contractual damages, as a result of the claim," without providing any facts to support such damages now.  Motion to Remand at 6-7.  The conclusory allegations of independent injury are insufficient to defeat a claim of fraudulent joinder. *Waters*, 158 F.R.D. at 109 ("[F]ailure to specify the factual basis for recovery against a non-diverse party constitutes failure to state a claim and fraudulent joinder of that party.").

In response to Nelson (#12), Medistar admits its allegations regarding Nelson's fraudulent activity do not satisfy Rule 9(b) particularity requirements but says "a more particular statement should be forthcoming." Because Medistar's tortious interference claim against Nelson is not a fraud claim, it is subject only to

"notice pleading" requirements of Rule 8, Medistar insists that it
has met that standard.  Medistar also maintains that *Dagley* and
*Nativida*, premised on negligence or a breach of implied duty of
good faith and fair dealing, do not apply to the issues in this
case.  Moreover the cases were decided at summary judgment stage,
not at a motion to dismiss stage.  It responds to Nelson's Economic
Loss Rule argument by citing *Nazareth Int'l Inc. v. J.C. Penny
Corp., Inc.*, 2005 U.S. Dist. LEXIS 14473 (N.D. Tex. July 19, 2005)
for the proposition that the Economic Loss Rule does not bar
recovery for any tort claim if an additional injury exists outside
the parameter of contract damages.  Medistar points to paragraph
141(f) of the Original Petition requesting actual damages,
exemplary damages, punitive damages and other relief the Court
deems just and proper–all outside contractual damages.  It also
argues that Rule 8 does not require its claim for consequential
damages to be pleaded with particularity.  If remanded, the issue
can be addressed in state court.

In response (#11) to the insurance Company Defendants' motion
to dismiss or for more definite statement, Medistar urges the court
to deny the motion or to allow it to amend.  Medistar concedes that
some of its allegations do not satisfy the particularity
requirement and "that a more particular statement will be
forthcoming" if the Court denies remand.  It maintains that its
conspiracy claim does not fall under the intra-corporate conspiracy

rule because it is alleging that the insurers conspired with Nelson.  It reiterates that the Economic Loss Rule does not apply because paragraph 141(f) of the Original Petition requests actual damages, exemplary damages, punitive damages and other relief the Court deems just and proper--all outside contractual damages. Medistar argues that it has adequately pleaded a claim against the insurance company Defendants for violations of the DTPA, breach of the duty of good faith and unfair dealing, Chapter 542, and breach of contract.

## Court's Ruling

Because the motion to remand must be decided on the basis of the pleadings at the time of removal, and not on any subsequent existing or proposed post-removal amendment, and because that pleading determines this Court's jurisdiction, the Court addresses the remand issues first, separately from the motions to dismiss.

As a matter of law in Texas, since Medistar has no contractual or special relationship with Nelson, Medistar fails to state a claim agsinst Nelson for tortious interference with contract and for conspiracy to defraud relating to Nelson's alleged improper negligent investigation of the insurance claims and manipulation of its reports to limit Medistar's recovery on its claim against the insurance company Defendants.

In *Natividad v. Alexsis, Inc.*, 875 S.W. 2d 695, 698 (Tex. 1994), the Texas Supreme Court held that in the insurance context

-27-

because the duty of good faith and fair dealing arises only from a contract giving rise to a special relationship as a result of unequal bargaining power between the parties to the insurance contract, where there is no privity of contract, as with an independent adjusting firm hired by the insurer, the adjusting firm did not owe an insured such a duty and therefore could not be liable for a breach of that duty.  The duty of good faith and fair dealing is non-delegable.  *Id.*  Therefore the Texas Supreme Court concluded that the insurer "remains liable for actions by its employees, agents or contractors that breached the duty of good faith and fair dealing owed to" the insured by the insurer.  *Id.* at 698 & n.7 ("The insurance companies must answer for the 'sins' of their agents.")

Relying on the rationale in *Navidad*, the Fifth Circuit in *Bui v. St. Paul Mercury Ins. Co.*, 981 F.2d 209, 210 (5th Cir. 1993)(applying Texas law), determined that any claim for negligent investigation brought by an insured against an independent claims adjusting firm hired by the insurer must fail as a matter of law. Subsequently that rule was expanded by the Dallas Court of Appeals in *Dear*, which found the independent adjusting firm "established its status as Scottsdale's agent" to cover allegations of improper investigation and settlement advice regardless of whether the plaintiff framed his allegations as negligence, bad faith, breach of contract, tortious interference with contract, or DTPA

-28-

violations.  *Dear*. 947 S.W. 2d at 917.

In the much-cited *Dagley* action, 18 S.W. 3d 787, charging wrongful denial of insurance claims, the plaintiffs alleged that Haag Engineering Company, an independent engineering firm hired by insurer State Farm to evaluate hail storm damage, was liable for negligence, conspiracy, tortious interference, violations of the DTPA and the Texas Insurance Code.  The appellate court, in affirming a summary judgment's dismissal of the tortious interference claim *inter alia*, concluded, "[A]bsent a special relationship, Haag cannot be held liable for tortious interference." 18 S.W. 3d at 794, *citing Dear*, 947 S.W. 2d at 917. In *Dear*, the Court reasoned that the defendant independent adjuster was retained and paid for by the insurer, had never entered into a contract with the insured, had no duty to the insured, had performed its role as an independent adjusting firm, and therefore was an agent or independent contractor of the insurance company. *Id*. at 791 & n.3, *citing Dear*, 947 S.W. at 917.  Moreover the Fourteenth Court of Appeals also affirmed the trial court's summary judgment dismissing the claim that State Farm and Haag conspired in their investigation of the plaintiffs' claims in an attempt to deny them the insurance benefits rightfully due them:

> "The mere agreement to resist a claim, however, is not an
> actionable civil conspiracy," *Massey v. Armco Steel Co*.,
> 652 S.W. 2d 932, 934 (Tex. 1983).  For liability to
> attach there must be an unlawful, overt act to support a
> conspiracy. *See id*.  We cannot conclude that submitting
> a report to State Farm with the conclusion that there was

> no hail storm damage to appellants' home is an unlawful,
> overt act to support a conspiracy.  Moreover, having
> found that Haag is not liable to appellants on their
> other claims, Haag cannot be liable for conspiracy.

18 S.W. 3d at 795.

Thus the only remaining claim against Nelson is for fraud.
Because the Original Petition was drafted in Texas state court, it
was subject only to the requirements for adequate pleading under
state law.  There is no counterpart to Federal Rule 9(b) in the
Texas Rules of Civil Procedure for pleading fraud.  Nor has Texas
followed *Twombly*.  Instead Texas Rule of Civil Procedure 45(b)
states that in the district and county courts the petition should
"consist of a statement in plain and concise language of the
plaintiff's cause of action . . . .  That an allegation be
evidentiary or be of legal conclusion shall not be grounds for
objection when fair notice to the opponent is given by the
allegations as a whole."   Rule 47 also requires only notice
pleading:

> An original pleading which sets forth a claim for relief
> whether an original petition, counterclaim, cross-claim,
> or third party claim, shall contain
>
> (a) a short statement of the cause of action sufficient
> to give fair notice of the claim involved,
>
> (b) in all claims for unliquidated damages only the
> statement that the damages sought are within the
> jurisdictional limits of the court, and
>
> (c) a demand for judgment for all the other relief to
> which the party deems himself entitled.

"A pleading provides sufficient fair notice of the claim involved

when 'an opposing attorney of reasonable competence could examine the pleadings and ascertain the nature and basic issue of the controversy and the relevant testimony.'"   *UMLIC VP LLV v. T&M Sales and Environmental Systems*, 176 S.W. 3d 595 (Tex. App.--Corpus Christi 2005)(citation omitted).   "The pleadings must be sufficiently adequate so the court is able, from an examination of the pleadings alone, to ascertain with reasonable certainty and without resorting to information from another source, the elements of a plaintiff's cause of action and relief sought with sufficient information upon which to base a judgment.  *Id., citing Tone v. Lawyers Title Ins. Corp.*, 578 S.W. 2d 679, 683 (Tex. 1979).  The petition must be liberally construed in favor of the pleader.  *Id., citing Stone v. Lawyers Title Ins. Corp.*, 554 S.W. 2d 183, 186 (Tex. 1977).  "'The court will look to the pleader's intendment' and uphold the pleading as to a cause of action even if some element of that cause of action has not been specifically alleged." *Id., citing Gulf, C. & S.F. Ry. Co. v. Bliss*, 368 S.W. 2d 594, 599 (Tex. 1963), and *Boyles v. Kerr*, 855 S.W. 2d 593, 601 (Tex. 1993). "'Every fact will be supplied that can reasonably be inferred from what is specifically stated.'"  *Id., citing Bliss*, 368 S.W. 2d at 599.   "'Mere formalities, minor defects and technical insufficiencies' will not invalidate a cause of action in a petition so long as the pleading gives fair notice to the opposing party."  *Id., citing Stoner*, 578 S.W. 2d at 683.

-31-

Because Nelson was not a party to any contract with Medistar, Medistar cannot assert a claim against Nelson for breach of contract or any cause of action that arises out of a contract.[10] To be viable, its claim for fraud against Nelson must be independent of the contract.  Because there are essentially no facts, but only vague and conclusory statements regarding Medistar's fraud claim, a summary judgment-type inquiry is required to determine who said or wrote what, where, and when and facts demonstrating reliance on those particular representations by Medistar. *Frisby v. Lumbermens Mut. Cas. Co.*, 500 F. Supp. 2d 697, 699 (S.D. Tex. 2007), *citing Smallwood*, 385 F. 3d at 573.  At present it appears to the Court that Medistar would have difficulty showing that it relied on Nelson's allegedly erroneous reports since it contends that they were incorrect, but it will give Medistar an opportunity to state supporting facts if it has any.

Accordingly, the Court

ORDERS Medistar to submit within twenty days either an affidavit or a deposition of someone with personal knowledge who can provide the necessary supporting facts satisfying Fifth Circuit pleading standards[11] to support the elements of its fraud claim[12]

---

[10] For this reason the Economic Loss Rule does not apply to the fraud claim.

[11] The Fifth Circuit has ruled, "State law fraud claims are subject to the heightened pleading requirements of Rule 9(b).  To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and

-32-

against Nelson.    Defendants may file responses within ten days
after Medistar submits its summary judgment-type evidence.    The
Court reminds the parties that such inquiry will be limited to
identifying "discrete and undisputed facts that would bar a
plaintiffs' recovery against an in-state defendant; anything more
risks 'moving the court beyond jurisdiction and into the resolution
of the merits . . . .'" *Smallwood*, 385 F.3d at 573-74.   The Court
defers ruling on the motions to dismiss until the motion to remand
has been resolved.

SIGNED at Houston, Texas, this 17th day of May , 2010.

_____

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

where the statements were made, and explain why the statements were
fraudulent.'" *Sullivan v. Leor Energy, LLC.*, 600 F.3d 542d, 550-51
(5th Cir. 2010), *citing Dorsey v. Portfolio Equities, Inc.*, 540 F.3d
333, 338-39 (5th Cir. 2008), and *ABC Arbitrage v. Tchuruk*, 291 F.3d
336, 350 (5th Cir. 2002).

[12] The elements of common law fraud are (1) a material
representation was made; (2) the representation was false; (3) when
the representation was made, the speaker knew it was false or made
it recklessly without any knowledge of the truth and as a positive
assertion; (4) the speaker made the representation with the intent
that the other party should act upon it; (5) the party acted in
reliance on the representation; and (6) the party thereby suffered
injury.   *Allstate Ins. Co. v. Receivable Finance Co., L.L.C.*, 501
F.3d 398, 406 (5th Cir. 2007), *citing In re First Merit Bank, N.A.*,
52 S.W.3d 749, 758 (Tex. 2001).