```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION


MEDISTAR TWELVE OAKS PARTNERS,   §
LTD.,                            §
                                 §
          Plaintiff,             §
                                 §
VS.                              §   CIVIL ACTION H-09-3828
                                 §
AMERICAN ECONOMY INSURANCE       §
COMPANY, et al.,                 §
                                 §
                                 §
          Defendants.            §
```

## OPINION AND ORDER

Pending before the Court in the above referenced cause for damages to Plaintiff Medistar Twelve Oaks Partners, Ltd.'s ("Medistar's) commercial building and its contents caused by Hurricane Ike are (1) Medistar's opposed motion to extend time to file response (instrument #64) to the Court's order of May 17, 2010; (2) Defendant Nelson Architectural Engineers, Inc.'s ("Nelson's") first motion to dismiss or, alternatively, for more definite statement (#4); (3) Defendants American Economy Insurance Company ("American Economy"), Liberty Mutual Insurance Company ("Liberty"), and Safeco Insurance Company of America's ("Safeco's") (collectively, "insurance company Defendants') motion to dismiss or, alternatively, for more definite statement (#5); and (4) Medistar's motion to remand (#10).

-1-

This action was removed from the 55th District Court of Harris County, Texas on diversity jurisdiction. Defendants have argued that Nelson is non-diverse since both it and Medistar are citizens of Texas and that it was improperly joined to defeat removal.

In its opinion and order of May 17, 2010 (#58), which the Court incorporates herein, the Court addressed only Medistar's motion to remand because its resolution determines whether this Court has jurisdiction over this case or must remand it to state court. A motion to remand must be decided on the basis of the pleadings at the time of removal. Plaintiff alleges that Nelson, in the wake of Medistar's filing a claim for insurance, allegedly performed an "outcome oriented" and "dishonest" investigation of the cause and amount of damages to Medistar's insured building and "misrepresent[ed] survey results" in reports in order to reduce the payments owed by the insurance company Defendants to Medistar. The Court ruled that Medistar failed to state a claim for tortious interference with contract and for conspiracy to defraud under Texas law against Nelson. Thus the only remaining claim against Nelson is for fraud,[1] which the Court ruled that Medistar had not

---

[1] The elements of fraud are "(1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Allstate Ins. Co. v. Receivable Finance Co., LLC*, 501 F.3d 398, 406 (5th Cir. 2007).

adequately pleaded under Federal Rules of Civil Procedure 9(b)("party must state with particularity the circumstances constituting fraud or mistake") and 12(b)(6) and Fifth Circuit case law (specifying the fraudulent statements or omissions and who made them, what they were, when made, and why fraudulent), although Medistar's petition may have satisfied Texas' far more lenient pleading standards. The Court ordered Medistar "to submit within twenty days either an affidavit or a deposition of someone with personal knowledge who can provide the necessary supporting facts" required to flesh out its claim and meet the federal standards.

Plaintiff's motion to extend that time period requested a two-week extension, until June 6, 2010, because (1) Dr. Erik L. Nelson, of Nelson, was in Moscow and Plaintiff's counsel would like to depose him to respond to the Court's order, and (2) Plaintiff's counsel had a scheduled vacation from May 31-June 6, 2010.

The insurance company Defendants object (#67) that Medistar was required to have knowledge of sufficient facts to support its pleading when it filed the case and no new discovery should be needed. *Waters v. State Farm Mut. Auto. Ins. Co.*, 158 F.R.D. 107, 109 (S.D. Tex. 1994), *quoting Segal v. Gordon*, 467 F.2d 602, 607-08 (2d Cir. 1972)("A complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should serve to seek redress for a wrong, not find one."). Nelson makes the same objection (#69). Nelson also points out that five months

have elapsed between Plaintiff's filing the motion to remand and Plaintiff's request for an extension to depose its corporate representatives.  Although Medistar replies (#71) that Defendants "appear to have misunderstood the Court's Order and their misguided conclusions would prevent Medistar from complying with the Court's instructions," the Court agrees with Defendants that Medistar should have had sufficient facts at the time it filed its suit.

Nevertheless, the affidavits Medistar has filed in response to the order describe the history of Medistar's claim as personally known to the affiants and how, when, where and from whom Medistar gathered information that led to its charges that Nelson had submitted fraudulent reports to save the insurance Defendants money.  Medistar filed (1) an affidavit with supporting exhibits (#72-79) of Donice Krueger, a certified Public Accountant for Medistar who coordinated its hurricane-recovery efforts and managed related insurance claims processes, describing specifically the events from the fall of 2008, including how Medistar first reacted to Nelson's reports and then came to discover that the reports were allegedly fraudulent; and (2) the affidavit with exhibits(#80-82), of Monzor Hourani P.E., President of Medistar, also recounting events from the date of Hurricane Ike to February 25, 2009 and what he learned from them.  These affidavits are not based on newly discovered evidence.  Therefore the Court grants Medistar's motion for extension and reviews the submissions.

According to Krueger's affidavit (#72), with factual allegations confirmed in Hourani's (#80), Nelson was hired by Safeco to provide opinions about engineering issues relating to damages to Medistar's property known as Twelve Oaks Tower during Hurricane Ike on September 13, 2008. Nelson provided four reports (the first three attached as Exhibits 2-5, #73-75) to Safeco, the third of which (Ex. 5) was dated December 1, 2008 and was prepared by Dr. Erik Nelson and was purportedly false. Hourani's affidavit states that without investigation and verification, Nelson relied on and incorporated into his third report an EFI Global, Inc. ("Global") report dated October 9, 2010, which in turn erroneously stated that according to Armadillo Glass, Inc., the connections of the building were being examined and restored prior to Hurricane Ike. #80, ¶¶ 13-14. Thus Nelson's report, titled "Hurricane Distress Analysis III," stated that the building was deflected as much as six inches and that the condition existed before Hurricane Ike. *Id.* AT ¶ 10. The report also "made several representations . . . that [Dr. Nelson] intended Medistar to rely on with respect to the Twelve Oaks Tower's damages." #80, ¶18. Hourani states that "Medistar initially relied on Erik Nelson's representations." #80, ¶19. Nevertheless Medistar hired Gary Boyd, P.E. ("Boyd"), a structural engineer, and subsequently a survey company, Pepe Engineering ("Pepe"), because Hourani, "as a professional engineer and building owner," was concerned about the safety of Medistar's

building (380, ¶ 19) and therefore he wanted them to analyze Dr. Nelson's opinions and data. Boyd and Pepe concluded that Dr. Nelson's data and opinions were wrong. At a meeting on December 22, 2008 Medistar questioned Dr. Nelson about the discrepancy between his report and graphical representations and the findings of Boyd and Pepe. Nelson provided no explanation at the time, but said he would perform some research and get back with Medistar, but he failed to do so. On January 14, 2009, Boyd issued a report (#76, Ex. 6) identifying errors in Dr. Nelson's facts and opinion.[2] At a meeting on January 22, 2009, Dr. Nelson purportedly agreed that Boyd's data did not support his analysis and that his analysis was incorrect. Hourani states that on that date, Sandra Parker of Safeco and Dr. Nelson "confirmed to me that Erik Nelson's opinions regarding the extent of the deflection of the building were wrong." On February 4, 2009 Dr. Nelson issued a revised report that discussed how Nelson had previously misrepresented Boyd's data in the December 1, 2008 report. These events and others further delayed the adjustment of Medistar's claim by two months and led to Twelve Oaks Tower lessees' attempting to back out of their leases or declining to renew. Finally in a telephone conversation around February 18, 2009 between Gene Baker, President of Global, and Hourani, they agreed that Medistar would prepare

---

[2] The affidavit states that Pepe's data (#78, Ex. 8)was similar to Boyd's raw survey data.

questions for Global about the survey procedures and data that Global had provided to Nelson, so Global could provide answers to Medistar without breaching its duties to its client, Nelson. Hourani asked Boyd to prepare the questions and forward them to Sandra Parker, who had requested by email that written questions for Safeco be submitted not directly from Medistar, but through her.  Although Boyd sent the questions, Hourani states that Baker reported that neither Parker nor Safeco ever forwarded to Boyd the list of twenty-one questions.

In response to Medistar's affidavits (#95), the insurance company Defendants argue that Medistar has failed to establish with competent evidence the elements of fraud, specifically that Medistar justifiably relied on any representation in Nelson's December 1, 2008 report, that Nelson intended to induce Medistar to rely on the representations in that report, that Medistar suffered an injury in reliance on them, and that Dr. Nelson knew that any of the representations were false when he made them or that he made them with reckless disregard for the truth.  They also insist that because Dr. Nelson stated in his December 1, 2008, "Any and all usage or reliance upon this report by parties other than the client is expressly prohibited,"[3] there is no justifiable reliance as a

---

[3] Pointing to Ex, 4 at 5, to Krueger's affidavit, Defendants note that Nelson's client was not Medistar because Nelson was hired "by Paul Nilles with Taylor Claims Consulting and Construction (Client)"("Taylor") and Taylor is an agent of the insurance company Defendants.  See also Court's Opinion and Order, #58 at 13, and at

matter of law. *See, e.g., Forest Oil Corp. v. McAllen*, 268 S.W. 3d 51, 56 (Tex. 2008)("[A] disclaimer of reliance on representations, 'where the parties' intent is clear and specific, should be effective to negate the element of reliance.'"); *Coastal Bank SSB v. Chase Bank of Tex., N.A.*, 135 S.W. 3d 840, 843 (Tex. App.--Houston [1st Dist.] 2004, no pet.)(holding that disclaimers of reliance in a contract between sophisticated parties negated justifiable reliance). Thus they urge the court to deny Medistar's motion to remand and dismiss Nelson from the suit. Moreover because of the disclaimer, the insurance company Defendants argue that Nelson did not intend to influence Medistar's conduct and had no reason to expect that the Medistar would rely on the reports. *Ernst & Young, LLP v. Pacific Mutual Life Ins. Co.*, 51 S.W. 3d 573, 579-80 (Tex. 2010), adopting Section 531 of the *Restatement (Second) of Torts*)(1977)(person who makes a misrepresentation is liable to the person or class of persons the maker intends or "has reason to expect" will act in reliance on the misrepresentation"). Section 531's "reason to expect" standard "requires a degree of certainty that goes beyond mere foreseeability"; even where there is an obvious risk that the misrepresentation might be repeated to a third party, the fraudfeasor must have "information that would lead a reasonable man to conclude that there is *an especial*

---

27 and 32 ("Medistar has no contractual or special relationship with Nelson."

*likelihood that it will reach those persons and will influence their conduct.* [emphasis in original]" *Ernst & Young*, 51 S.W. 3d at 579-80. Without such evidence, the intent-to-influence element of fraud is negated as a matter of law. *Id.* at 582. Here the disclaimer demonstrates that Nelson had no reason to expect that third parties like Medistar would rely on its report. Furthermore, conclusory statements by Medistar that it relied on Nelson's report are insufficient to satisfy Rule 9(b). *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 800, 830-31 (S.D. Tex. 2007). Moreover the facts presented by Medistar in Krueger's affidavit show that Medistar did not rely on Nelson's report. Medistar hired an independent structural engineer, Boyd, to analyze Nelson's findings. By December 8, 2008, Medistar had received a report from Armadillo Glass challenging Nelson's findings and called the insurance company Defendants to request a meeting with Erik Nelson to discuss his findings, about which they had questions. Krueger affidavit, Ex. 1 at 9-11. Boyd reported to Medistar that its analysis did not agree with that of Dr. Nelson and asked for an explanation, and a meeting was set up on December 22, 2008 to discuss the problem. Krueger also stated that on December 9, 2008, Medistar decided that "the experts which Safeco has retained and reports that Safeco secured validate Medistar's opinion that we have not been treated fairly and honestly regarding this claim." *Id.*, Ex. 1 at ¶12. Boyd's subsequent report

disagreed with many of Nelson's findings. *Id.*, Ex. 6. Medistar cannot have justifiably relied on a report that it questions from the beginning. *Lewis v. Bank of America, N.A.*, 343 F.3d 540, 546-47 (5th Cir, 2002)("[A] person may not justifiably rely on a representation if 'there are 'red flags' indicating such reliance is unwarranted.'"), *quoting In re Mercer*, 246 F.3d 391, 418 (5th Cir. 2001). Moreover by December 1, 2008, Medistar and its insurers were in an adversarial posture. *American Physicians Ins. Exchange v. Garcia*, 876 S.W. 2d 842, 849 (Tex. 1994)(recognizing that insurers and insureds engaged in negotiations about potential coverage are in an adversarial situation). Insurance company Defendants also note that Medistar fails to present any facts or figures to show reliance damages; conclusory allegations are insufficient to support a claim for fraud. *See, e.g., James L. Gang & Associates, Inc. v. Abbott Laboratories, Inc.*, 198 S.W. 3d 434, 443 (Tex. App.--Dallas 2006, no pet.)(affirming summary judgment on fraud claim because plaintiff's conclusory allegations do not constitute evidence of out-of-pocket damages). Nor has Medistar put forth evidence that when the representation was made, Nelson knew it was false or made it recklessly without knowledge of the truth. Indeed after Medistar confronted Nelson, Nelson corrected the mistakes in its February 9, 2009 report. Medistar's conclusory allegations, unsupported by facts, fail to meet the heightened pleading standards of Rule 9(b). *Tuchman v. DCS*

*Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).

The Court would point out that Medistar is not required to establish or prove these elements of fraud at the removal stage of the litigation, but only to allege them with specific facts that would state with particularity a plausible claim for fraud against Nelson and to put Nelson on notice of the claim against it. Nor is this a summary judgment context requiring Medistar to produce competent evidence to raise a question of fact to defeat such a motion.

Nevertheless, the Court agrees with the insurance company Defendants that Medistar has failed to assert facts that would support essential elements of a plausible fraud claim against Nelson: that Nelson knew that his findings and opinion were false when made or were made with reckless disregard for the truth; that Nelson intended to have Medistar justifiably rely on that report; and that Medistar did justifiably rely on the report. Accordingly, the Court concludes that Nelson is improperly joined and should be dismissed.

The insurance company Defendants move to dismiss the claims against them for breach of contract, fraud, conspiracy to defraud, breach of the duty of good faith and fair dealing, violation of the Deceptive Trade Practices Act and Section 542 of the Texas Insurance Code. This Court has laid out the relevant pleading standards in its Opinion and Order of May 17, 2010, #58 at 7-12.

While it finds Medistar's pleadings are deficient, the Court will permit Medistar to file an amended complaint that satisfies those standards for its claims against the insurance company Defendants.

Accordingly, for the reasons indicated above, the Court ORDERS the following:

(1) Medistar's motion to extend time to file response (document #64) is GRANTED;

(2) Nelson's motion to dismiss (#4) is GRANTED, its motion for a more definite statement is MOOT, and Nelson is hereby DISMISSED with prejudice;

(3) Medistar's motion to remand to the 55th District Court of Harris County, Texas (#10) is DENIED;

(3) the insurance company Defendants' motion for a more definite statement (#5) is GRANTED and Medistar shall file within twenty days of receipt of this order an amended complaint with factual support for its claims against them; and

(5) insurance company Defendants' motion to dismiss (#5) is currently DENIED, but they may file an amended motion, if appropriate, after Medistar files its amended

complaint.

**SIGNED** at Houston, Texas, this  23rd  day of July  , 2010.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE