IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MEDISTAR TWELVE OAKS PARTNERS, LTD., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-09-3828 |
| | § | |
| AMERICAN ECONOMY INSURANCE COMPANY, et al., | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court in the above referenced cause, arising out of an insurance claim by Plaintiff Medistar Twelve Oaks Partners, Ltd. ("Medistar") for damages to Medistar's commercial building and its contents caused by Hurricane Ike and removed from the 55th District Court of Harris County, Texas on diversity jurisdiction, are (1) Defendants American Economy Insurance Company ("American Economy"), Liberty Mutual Insurance Company ("Liberty Mutual"), and Safeco Insurance Company of America's ("Safeco's") (collectively, "insurance company Defendants'") [second] Rule 12(b)(6) motion to dismiss and Rule 12(f) motion to strike (instrument #156); (2) Medistar's motion to set hearing (#174) on #156; and (3) insurance company Defendants' motion for partial summary judgment (#184).

Because the Court does not set hearings on motions to dismiss or motions for summary judgment unless it determines that they would be of help to the Court, and because it does not find that a hearing would be of aid here, it denies the motion to set hearing.

## Allegations of the Amended Complaint

On August 12, 2010 Medistar filed its Amended Complaint (#149), asserting against all three insurance company Defendants the same causes of action for breach of insurance contract, breach of common law duty of good faith and fair dealing, and violations of Chapter 542 of the Texas Insurance Code[1] and Deceptive Trade

---

[1] Section 542.058 of the Texas Insurance Code provides,

(a) Except as otherwise provided, if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statues, or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060.

(b) This section does not apply in a case in which it is fund as a result of arbitration or litigation that a claim received by an insurer is invalid and should not be paid by the insurer.

Section 542.060 states,

(a) If an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees.

Practices-Consumer Protection Act ("DTPA"), Texas Business & Commerce Code Annotated §§ 17.41-63.[2]

A Safeco representative sold the Safeco Business Insurance Policy to Medistar, which paid the premiums to Safeco Business Insurance. American Economy is listed in the Safeco Business Insurance Policy as an insurer. Safeco is an affiliate, member or subsidiary of American Economy and Liberty Mutual.

On or about September 13, 2008, Hurricane Ike damaged the building and contents of Medistar's Twelve Oaks Tower,[3] 4126 Southwest Freeway, Houston, Texas 77027, insured under an all-risk policy that covered Medistar's property and business,[4] number 02-

---

(b) If a suit is filed, the attorney's fees shall be taxed as part of the costs in the case.

Medistar complains that Defendants failed to make prompt payment for more than 60 days in violation of "The Prompt Payment of Claims Act," Texas Insurance Code Sections 542.055-542.060.

[2] Formulaically tracking the language of the statute, without providing any factual support Medistar conclusorily charges that Defendants represented that the insurance agreement confers or involves rights, remedies or obligations that it does not have, that they failed to disclose information about goods and services to induce the consumer into purchasing the insurance policy, that they engaged in unconscionable conduct prohibited by the DTPA in accepting premiums without a reasonable basis to pay benefits due and owing and took advantage of Medistar's lack of knowledge and experience to create a gross disparity between the consideration paid in the transaction and the value received in violation of Chapter 541 of the Texas Insurance Code.

[3] The insured building operated as a medical office building in which physicians leased offices.

[4] An "all-risks" policy is "one in which the insurer undertakes the risk for all losses of a fortuitous nature, which,

CE-188659-10, issued by American Economy and Safeco. Medistar provided proper notice of its loss immediately after the hurricane.

On or about March 10, 2009 Medistar submitted a claim[5] for damages under the policy to American Economy and Safeco with proof of loss and requested full payment for losses covered under the policy. Safeco assigned its employee, Sandy Parker ("Parker"), as adjuster on the claim.[6] No American Economy employee adjusted the claim; American Economy delegated its insurance loss adjustment duties to its parent corporations Safeco and Liberty Mutual. Liberty Mutual is the parent and controlling company of Safeco, and Liberty Mutual's employees participated in the adjustment and claims management of Medistar's claim. Medistar maintains that it cooperated fully with the investigation and complied with all conditions precedent to recovery.

Medistar lists payments made to it under the policy before it filed this action: (1) October 7, 2008, $100,000.00; (2) December 16, 2008, $500,000.00; (3) February 23, 2009, $500,000.00; (4) April 3, 2009, $1,796,763.96; (5) April 3, 2009, $311,774.88; (6)

---

in the absence of the insured's fraud or other intentional misconduct, is not expressly excluded in the agreement." *Lexington Insurance Co. v. Buckingham Gate, Ltd.*, 993 S.W. 2d 185 (Tex. App.--Corpus Christi 1999)(and cases cited therein).

[5] Assigned claim number 598799873017.

[6] The Amended Complaint conclusorily and vaguely states that Liberty Mutual, through its agents and representatives, helped direct the adjustment activities and decisions of the adjusters and that it owns and controls the activities at Safeco.

April 9, 2009, $98,225.12; and (7) October 1, 2009, $182,512.24. After Medistar filed the instant action, Defendants made two additional payments for benefits claimed prior to filing the suit: (1) February 18, 2010, $124,190.00 (for rent abatement claims); and (2) February 18, 2010, $77,913.00.

At a meeting on September 2, 2009 between Medistar and American Economy and Safeco, American Economy and Safeco refused to pay any more on Medistar's claim and stated that they disagreed with the proof of loss amounts submitted by Medistar. Furthermore Sandy Parker informed Medistar that she had no settlement authority.

On or about September 15, 2009, by letter American Economy and Safeco demanded an Examination Under Oath and additional documentation. Exh. 1 to #149. On September 29, 2009 and October 20, 2009 Medistar appeared for Examinations Under Oath, produced documents, cooperated with Defendants about their requests and provided a detailed timeline (Exh. 2) to Safeco about their claim events from September 22, 2008-September 28, 2009. Representatives of American Economy and Safeway nevertheless indicated they would not pay any additional benefits. On October 23, 2009 Medistar's attorney sent Defendants a certified letter demanding payment, as required under Texas Insurance Code Annotated Chapter 541 and Texas Business & Commerce Code Annotated Chapter 17. Medistar filed this lawsuit. American Economy and Safeco then demanded an appraisal

under the policy provision.   The Court has recently been informed that the appraisal process is still ongoing.

The Amended Complaint alleges that American Economy, Safeco, and Liberty had an obligation in good faith and fair dealing and full honesty to conduct a prompt investigation and a fair evaluation of the benefits owed to Medistar and to promptly pay all benefits covered under the policy and owed to Medistar.   Defendants should be working for the benefit of their insured rather than in their own self interest.   Medistar complains that the insurance company Defendants hired "outcome oriented" and "dishonest" vendors, engineers, and consultants[7] to address Medistar's claim. Instead these agents, representatives and employees misrepresented survey results, stating in reports that numerous structural cracks existed in the building before Hurricane Ike, as Medistar's representatives pointed out to Defendants in the Examinations Under Oath and at various other times.   Exh. 2 to #149.   Medistar asserts that the insurance company Defendants have wrongfully delayed payment or failed or refused to pay Medistar's covered claims on a timely basis, when no reasonable insurance company would have refused, and have persisted in delaying or refusing to pay the full amounts due without giving honest reasons for their payment of an inadequate amount of benefits.   Their refusal to properly evaluate

---

[7] These included Nelson Architectural Engineers, Inc, and Wiss, Janney, Elstner Associates, Inc., originally non-diverse Defendants which were dismissed after removal.   #25 and 126.

the damage forced Medistar to hire its own engineers and to i8ncur additional expense for damages.

Finally Medistar claims that before Hurricane Ike and during the pendency of Medistar's claims, Safeco and Liberty Mutual "instituted performance based claim management directives to lower the amounts paid on claims, such as Medistar's, in secret from their customers and for the purpose of adding profitability to Safeco and Liberty Mutual."   Medistar contends that not only did such conduct occur in Medistar's case, but that such acts and omissions occur so frequently as to constitute a general business practice of Defendants in handling claims and that their "entire claims process is unfairly designed to reach favorable outcomes for Defendants at the expense of the policyholders.   These claim processes are not disclosed to policyholders at the point of sale of the insurance policy nor during the claim process."  #149 at 14.

## Standards of Review

**Federal Rules of Civil Procedure 8(a) and 12(b)(6)**

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true.  *Kane Enterprises v. MacGregor (US), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003), *citing Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

"While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). *See also Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, *14 (S.D. Tex. Jan. 31,

2008)."Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

Recently, in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009)(5-4), the Supreme Court, applying the *Twombly* plausibility standard to a *Bivens* claim of unconstitutional discrimination and a defense of qualified immunity for government official, observed that two principles inform the *Twombly* opinion: (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." . . . Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."; and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)("[W]hen considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory," *citing Cinel v. Connick*, 15

F.3d 1338, 1341 (5th Cir. 1994)), *cert. denied sub nom. Cloud v. U.S.*, 536 U.S. 960 (2002).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record.  *Lone Star Fund V. (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994).  *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken").

**Federal Rule of Civil Procedure 9(b)**

Fraud claims must also satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b): "In allegations alleging fraud . . ., a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  A dismissal for failure to plead with particularity as required by this rule is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim.  *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).  The Fifth Circuit interprets Rule 9(b) to require "specificity as to

the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005).

Because "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not," it applies to statutory claims based on allegations of fraud. *Lone Star Ladies Inv. Club v. Schlotzky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994). "Claims alleging violations of the Texas Insurance Code and the Deceptive Trade Practices Act . . . are subject to the requirements of Rule 9(b)." *Frith v. Guardian Life Ins. Co. of America*, 9 F. Supp. 2d 734, 742-43 (S.D. Tex. 1998). *See also, e.g., Berry v. Indianapolis Life Ins. Co. "Berry I")*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009). Where "[t]he factual background of . . . claims is substantively identical," causes of action arising under DTPA, the Texas Insurance Code, or common law fraud must satisfy Rule 9(b), which reaches "all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Frith*, 9 F. Supp. 2d at 742, *citing Berry*, 608 F. Supp. 2d at 789, 800; *Hernandez v. Ciba-Geigy Corp., USA*, 200 F.R.D. 285, 290-91 (S.D. Tex. 2001).

**Federal Rule of Civil Procedure 12(f)**

Under Federal Rule of Civil Procedure 12(f),

-11-

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act:
>
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

The court has considerable discretion whether to grant a motion to strike.  *FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993). Motions to strike are usually viewed with disfavor and rarely granted since they seek a drastic remedy and are frequently sought merely to delay.  *1st United Telecom, Inc. v. MCI Communications Services, Inc.*, Civ. A. No. 3:10-CV-2255-B, 2011 WL 2292265,*1 (N.D. Tex. June 8, 2011).  Such motions should be denied if there is any question concerning law or fact.  *Id.*  Even when addressing a pure question of legal sufficiency courts are "very reluctant" to determine such issues on a motion to strike, preferring to determine them "only after further development by way of discovery and a hearing on the merits, either on summary judgment motion or at trial."  5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1381 (3d ed. 2004).  Nevertheless, "a Rule 12(f) motion to dismiss is proper when the defense is insufficient as a matter of law."  *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983).

**Federal Rule of Civil Procedure 56**

-12-

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 317, 323 (1986). The substantive law governing the claims identifies the essential elements and thus indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 325 (1986).

Where the non-movant bears the burden of proof at trial, the movant need only point to the absence of evidence to support an essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant succeeds, the non-movant must come forward with evidence such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the nonmovant, and a fact is considered 'material' if

it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993).   Summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322-23; *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).   Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007). Conjecture, conclusory allegations, unsubstantiated assertions and speculation are not adequate to satisfy the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).   "'[A] subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief.'" *Lawrence v. Univ. of Texas Medical Branch*, 163 F.3d 309, 313 (5th Cir. 1999), *quoting Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983).   Nor are pleadings competent summary judgment evidence. *Little,* 37 F.3d at 1075; *Wallace v. Texas Tech. U.*, 80 F.3d 1042, 1045 (5th Cir. 1996).

**Insurance Companies' Motions to Dismiss and to Strike (#156)**

The insurance company Defendants argue that, as a matter of law, all claims against Liberty Mutual should be dismissed because

they can only be brought against a party to the insurance contract, and Liberty Mutual was not a party to the insurance contract in dispute. *Campbell v. Automobile Ins. Co. of Hartford, Connecticut*, No. 06-CV-0158, 2007 WL 1390625, *2 (Tex. App.--Amarillo May 9, 2007, no pet.)(defendant must be a party to the contract for plaintiff to establish breach of contract liability); *Natividad v. Alexis, Inc.*, 875 S.W. 2d 695, 698 (Tex. 1994)(without a contract there would be no special relationship to give rise to the duty of good faith and fair dealing; agents of the insurer who participate in the claims handling process do not owe a duty of good faith and fair dealing to the insured as a matter of law); *Crawford v. GuideOne Mutual Ins. Co.*, 420 F. Supp. 2d 584, 599-600 (N.D. Tex. 2006)("to impose liability upon an insurer for violations of Article 21.21 and the DTPA Texas law requires an insured to show that it is entitled to recover for a breach of the duty of good faith and fair dealing"); *Parra v. Markel Intern. Ins. Co., Ltd.*, 300 Fed Appx. 317, 319 (5th Cir. 2008)(plaintiff must establish either privity with the insurer or some sort of reliance on actions of the insurer for a claim under the Texas Insurance Code § 541.151 for unfair or deceptive practices by insurers), *citing Warfield v. Fidelity and Deposit Co.*, 904 F.2d 322, 326-27 (5th Cir. 1990); *Harris v. American Protection Ins. Co.*, 158 S.W. 3d 614, 623 (Tex. App.-Fort Worth 2005, no pet.)("An insurer will not be held liable for violating article 21.55 [now § 541.055] unless it is found

liable    for    the    underlying    insurance    claim"    and    §
542.051(2)addresses only a "first party claim" made by an insured
"under an insurance policy or contracts").

Medistar asserts that Liberty Mutual is the parent and
controlling company of Safeco.  Under Texas law, each corporation,
including a parent and a wholly owned subsidiary, is a separate
entity liable for its own debts and torts.  *Western Horizontal
Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 66 (5th Cir.
1994).  Because Medistar has not asserted alter ego nor pleaded
facts supporting such a theory nor any other basis for piercing the
corporate veil, Liberty Mutual is not liable for the acts of
Safeco.

Moreover, in the Amended Complaint, filed pursuant to a Court
Order (#126), Defendants contend that Medistar "presents a global
accretion of conclusory facts to somehow apply to each and every
cause of action," leaving the Court to try to divine which facts
relate to which cause of action, so the Amended Complaint is also
deficient.

Furthermore since Medistar has previously had an opportunity
to amend by Court order (#126) and has failed to cure pleading
deficiencies, Defendants urge this Court not to give it yet another
chance.

As for the claims against Safeco and American Economy, the
insurance company Defendants contend that Medistar also fails to

state a factual basis for them, but provides only conclusory allegations, or it fails to plead with particularity where required.  The only allegations against Safeco are the following:

> 92.  Safeco's conduct, as described above, constitutes a breach of the insurance contract made between Safeco and Medistar.
> 93.  Safeco's failure and refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the policy in question and under the laws of Texas, constitutes [*sic*] material breaches of the insurance contract with Medistar.

Medistar does not identify what conduct "described above" concerns the breach.  Nor does it identify what provision of the contract was breached.  *Hibbets v. Lexington Ins. Co.*, 377 Fed. Appx. 352, 355, No. 09-30830, 2010 WL 1778953, *3 (5th Cir. May 4, 2010)(affirming dismissal of breach of contract claim under Louisiana law because complaint failed to identify the specific policy provision alleged to be breached, an amount that insurer should have paid, and other necessary facts).

Furthermore, as a matter of law, insurance company Defendants insist that no breach of contract occurred and that Safeco and American Economy cannot be liable even if one assumes Medistar's allegations are true.  The Amended Complaint acknowledges that Safeco and American Economy have invoked the appraisal provision of the insurance policy.  The appraisal provision (#156, Ex. A, Building and Personal Property Coverage Form, E(2), at 10; Amended Complaint at ¶ 41) is a remedy provided if the parties "disagree on the value of the property or the amount of loss. . . ."  If the

-17-

insurer pays the appraised value, even if that amount is greater than the initial payments on the claim, there can be no breach of the insurance policy. *Breshears v. State Farm Lloyds*, 155 S.W. 3d 340, 343 (Tex. App.--Corpus Christi 2004, pet. denied)(holding that because State Farm paid the amount of the appraisal, no breach of contract occurred).[8]   Defendants argue that because there is no showing that Safeco and American Economy will not pay the appraisal award, there is no factual basis for a breach of contract claim now.  Because the breach of contract claim is not ripe, the Court

---

[8] This Court notes that an appraisal clause is included in an insurance contract "to provide a binding, extra-judicial 'remedy for any disagreement regarding the amount of the loss.'" *Amine v. Liberty Lloyds of Texas Ins. Co.*, No. 01-06-00396-CV, 2007 WL 2264477, *3 (Tex. App.--Houston [1st Dist.] Aug. 9, 2007), *citing Breshears v. State Farm Lloyds*, 155 S.W. 3d 340, 344 (Tex. App.--Corpus Christi 2004, pet. denied).  It provides the means of resolving a dispute about the amount of the insured's loss; the umpire's decision establishes the amount of the loss. *Id.*  An appraisal award pursuant to such a clause in the insurance contract "is binding and enforceable, and a court will indulge every reasonable presumption to sustain an appraisal award." *Id., citing In re Allstate Cty. Mut. Ins. Co.*, 85 S.W. 3d 193, 195 (Tex. 2002), and *Franco v. Slavonic Mut. Fire Ins.*, 154 S.W. 3d 777, 786 (Tex. App.--Houston [14th Dist.] 2004, no pet.).  An appraisal award "estop[s] one party from contesting the value of damages in a suit on the insurance contract, leaving only the question of liability for the court." *Id., citing Breshears*, 155 S.W. 3d at 343.  Full and timely payment of the award precludes an award of Article 21.55 penalties as a matter of law. *Id.* at *5, citing *Breshears*, 155 S.W. 3d at 344 ("holding that insurer did not breach contract and insureds were not entitled to payment of penalty fees, even though final payment was delayed until completion of appraisal process"), and *Waterhill Cos. Ltd. v. Great American Assurance Co.*, No. 05-4080 CV, 2006 WL 699577 at *2 (S.D. Tex. March 16, 2006)("holding that, when the appraisal clause is invoked, a delay in payment pursuant to the appraisal process does not constitute an Article 21.55 violation").

-18-

should strike that claim under Rule 12(f).

Medistar's bad faith allegations should be dismissed because (1) Medistar has failed to specify a factual basis for those claims, but only relies on unspecified "conduct as described above," (2) it has failed to allege an independent tort, and (3) it has alleged no facts that show bad faith has occurred. "A claim for breach of duty of good faith and fair dealing is separate from any claim for breach of the underlying insurance contract." *Union Bankers Ins. Co. v. Shelton*, 889 S.W. 2d 278, 283 (Tex. 1994). Thus a plaintiff does not state a cause of action simply by alleging actions that would also constitute a breach of contract; "the threshold of bad faith is reached only when the breach of contract is accompanied by an independent tort." *Id.* Medistar has failed to allege an independent tort,[9] so its bad faith allegations

_____

[9] This Court observes that in *Transportation Insurance Co. v. Moriel*, 879 S.W. 2d 10, 17-18 (Tex. 1994)(most citations omitted), the Texas Supreme Court discussed bad faith insurance claims:

The threshold of bad faith is reached when a breach of contract is accompanied by an independent tort. Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith. Nor is bad faith established if the evidence shows that the insurer was merely incorrect about the factual basis for its denial of the claim, or about the proper construction of the policy. [*Lyons v. Miller Casualty Ins. Co.*, 866 S.W. 2d 597, 601 (Tex. 1993)("[T]he issue in bad faith focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct in rejecting the claim.").] A simple disagreement among experts about whether the cause of the loss is one covered by the policy will not support a judgment for bad faith. To the contrary, an insured

-19-

against Safeco and American Economy should be dismissed, urge
Defendants.

Moreover, Defendants maintain that Medistar has failed to
allege facts showing a denial of its claim or unreasonable delay in
payment. Evidence that demonstrates only a wrongful denial of a
claim does not show bad faith. *Douglas v. State Farm Lloyds*, 37 F.
Supp. 2d 532, 536-37 (S.D. Tex. 1999). To state a claim for breach
of duty of good faith and fair dealing, an insured must allege
"that there is no reasonable basis for denial of a claim or delay
in payment or a failure on the part of the insurer to determine
whether there is any reasonable basis for the denial or delay."
*Frith v. Guardian Life Ins. Co. of America*, 9 F. Supp. 2d 734, 740
(S.D. Tex. 1998). The insured must prove that the insurer (1)
denied or delayed payment of the claim and (2) "knew or should have
known that it was reasonably clear that the claim was covered."

_____

claiming bad faith must prove that the insurer had no
reasonable basis for denying or delaying payment of the
claim and that it knew or should have known that fact.

Examples of evidence that might indicate that an insurer lacked a
reasonable basis for denying an insured's claim are evidence that
the insurer knew that expert reports were not objectively prepared,
that an expert's methodology was faulty, that its statement of the
insured's financial obligations was inaccurate, or that it failed
to engage in any investigation before it denied a claim. *State
Farm Fire & Casualty Co. v. Woods*, 925 F. Supp. 1174, 1178 (E.D.
Tex. 1996).

Moreover,"[o]nly when accompanied by malicious, intentional,
fraudulent or grossly negligent conduct does bad faith justify
punitive damages." *Moriel*, 879 S.W. 2d at 18.

-20-

*Universe Life Ins. Co. v. Giles*, 950 S.W. 2d 48, 54-58 (Tex. 1997). Medistar has not even alleged facts showing a denial of a claim. Instead, it acknowledges that American Economy invoked the appraisal provision of the policy, this Court then ordered the appraisal to proceed (#38), and the appraisal process is ongoing. Nor has Medistar alleged facts showing that Safeco and American Economy unreasonably delayed payment of the claims. Because the policy provides the appraisal remedy where parties disagree on the value of the claim, Safeco and American Economy cannot be liable for breach of the duty of good faith by invoking that provision to resolve that claim. *Robinson v. State Farm Fire & Cas. Co.*, 13 F.3d 160, 162 (5th Cir. 1994)(where facts show a bona fide controversy over the value of the claim, an insurer cannot be liable for violation of the duty of good faith and fair dealing); *U.S. Fire Ins. Co. v. Williams*, 955 S.W. 2d 267, 268 (Tex. 1997)(same); *Durst v. Texas Mut. Ins. Co.*, No. 09-cv-0430, 2010 WL 3332198, *5 (Tex. App.--San Antonio Aug. 25, 2010, rev. denied)("A bona fide dispute is a sufficient reason for an insurance company's denial of a claim or failure to make prompt payment.").

Medistar is required to plead its Insurance Code and DTPA claims with particularity, but has failed to do so, and thus those claims should be dismissed. *Frith*, 9 F. Supp. 2d at 742("Claims alleging violations of the Texas Insurance Code and the DTPA . . . are subject to the requirements of Rule 9(b)"). Thus Medistar must

plead "the who, what, when, and where" of each element of the alleged claim. *Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997).  Instead it makes only conclusory, general statements about the elements of its DTPA and Insurance Code violations.  Thus these claims should be dismissed.[10]

In addition, urge Defendants, Medistar's DTPA claims against Safeco and American Economy should be dismissed because Medistar lacks standing under the statute since it has assets of $25 million or more.  Tex. Bus. & Com. Code § 17.45(4)(denying standing to sue under DTPA where corporation has assets of $25 million); *PPG Indus. v. JMB/Houston Ctrs. Ltd. P'ship*, 146 S.W. 3d 79, 85 (Tex. 2004)(holding that Texas Legislature "did not intend the DTPA for everybody" and excluded "claims by businesses with more than $25 million in assets").

Furthermore, the DTPA could not apply because the consideration for the insurance contract exceeded $500,000.  Tex. Bus. & Com. Code § 1749(f),(g)(barring DTPA claims where consideration exceeds $500,000); *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W. 2d 492, 496 (Tex. 1991)(consideration can be either the benefit to the promisor or the detriment to the promisee).

Nor has Medistar alleged the requisite causal connection

---

[10] This Court notes that breach of common law duty of good faith and fair dealing by an insurance carrier also gives rise to violations of the DTPA and the Texas Insurance Code. *Vail v. Tex. Farm Bureau Mut. Ins. Co.,* 754 S.W. 2d 129, 136 (Tex. 1988).

between the allegations concerning Defendants' conduct and the damages under the Insurance Code and the DTPA. *Provident Am. Ins. Co. v. Castaneda*, 988 S.W. 2d 189, 192 (Tex. 1998)(Insurance Code); *2 Fat Guys Inv., Inc. v. Klaver*, 928 S.W. 2d 268, 272 (Tex. App.- -San Antonio 1996, no writ). Thus these claims fail and should be dismissed. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701-02 (5th Cir. 1999)("Griggs' Insurance Code and Deceptive Trade Practices Act claims fail because there is no conceivable basis in law or fact upon which Blum's non-specific statements can be construed as actionable representations that caused the injury alleged by Griggs.").

Furthermore Medistar's "prompt payment act" claims under Chapter 542 against Safeco and American Economy should be dismissed because these Defendants have invoked the appraisal provision of the insurance policy. *Breshears*, 155 S.W. 3d at 344-45. Where the insurer, as here, waits to pay the remainder of the claim until after the appraisal value is decided, there can be no liability for penalties under the prompt payment act/Chapter 542. *In re Slavonic Mut. Fire Ins. Ass'n*,308 S.W. 3d at 563-64 ("Texas courts considering the issue have concluded that full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law.").

Although Medistar seeks exemplary damages for Defendants'

-23-

alleged DTPA violations and bad faith, both requests should be stricken under Rule 12(f). Texas law does not provide exemplary damages for violations of the DTPA or Insurance Code, both of which provide for "additional damages" up to trebled damages. Tex. Bus. & Com. Code § 17.50(b)(1)(DTPA); Tex. Ins. Code § 541.152(b); *Safeway Managing Gen. Agency v. Cooper*, 952 S.W. 2d 861, 869-70 (Tex. App.--Amarillo 1997, no pet.)(holding that plaintiff was not entitled to exemplary damages under the DTPA as a matter of law.).

Moreover to state a claim for exemplary damages against an insurance company for bad faith under Texas law, a plaintiff must allege that the insurance company acted with 'fraud, malice or gross negligence." Tex. Civ. Prac. & Rem. Code § 41.003[11]; *Transportation Ins. Co. v. Moriel*, 879 S.W. 2d 10, 23-24 (Tex.

---

[11] Section 41.003 provides in relevant part,

(a) Except as provided by Subsection (c), exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that harm with respect to which the claimant seeks recovery of exemplary damages results from:
    (1) fraud;
    (2) malice; or
    (3) gross negligence.
(b) The claimant must prove by clear and convincing evidence the elements of exemplary damages as provided by this section. . . .
(c) If the claimant relies on a statute establishing a cause of action and authorizing exemplary damages in specific circumstances or in conjunction with a specified mental state, exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the damages result from the specified circumstances or culpable mental state.

1994)("gross negligence includes two elements:  (1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety or welfare of others").  Furthermore, the alleged injury must have been intended or consciously risked by the insurance company and must be "independent and quantitatively different from the breach of contract and the compensable harm associated with it." *Moriel*, 879 S.W. 2d at 19.  The facts alleged by Medistar do not reach the level of "fraud, malice or gross negligence"; Medistar concedes that Safeco and American Economy began payments to Medistar under the policy shortly after Hurricane Ike and have continued to do so, in all over $3.6 million.  The remainder of disputed amounts is being addressed through the policy's appraisal provision process.  A simple disagreement over the amount of damages caused to the insured's property does not support  a punitive damages award. *Munoz v. State Farm Lloyds of Texas*, 522 F.3d 568, 574 (5th Cir. 2008)("Even if the insurer has no reasonable basis to deny or delay payment of the claim, the plaintiff may not recover punitive damages on that basis alone."); *Moriel*, 879 S.W. 2d at 18.  Defendants urge the court to strike Medistar's claims for exemplary damages under Rule 12(f) or dismiss them under Rule

12(b)(6).

**Plaintiff's Response (#170)**

Plaintiff contends that Defendants' motion to dismiss and to strike was untimely filed.  The Court agrees with Defendants that as a matter of law Plaintiff's objection is meritless because electronic service of the Court's order extended the response date by three days under Federal Rule of Civil Procedure 6(d) and from Sunday August 29 to Monday August 30 under Federal Rule of Civil Procedure 6(a)(1)(C).

Medistar then argues that Defendants have waived their arguments about Liberty Mutual because they did not assert them until this second motion to dismiss, which should therefore be denied.  Moreover it claims that such arguments are more appropriately raised in a motion for summary judgment.  If the Court permits Defendants to assert these defenses, Medistar requests the opportunity to replead or to prove this aspect of its claim as if Defendants had filed a motion for summary judgment with these arguments.

Alternatively, Medistar maintains that it has met the federal pleading standards.  It insists that it is well established in the Fifth Circuit that "[m]otions to dismiss are viewed with disfavor and rarely granted." *Test Masters Edu. Servs. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

Medistar objects to Defendants' contention that its Amended

Complaint "presents a global aggregation of conclusory facts that somehow apply to each and every cause of action." It characterizes this as an attack on the manner it which it has organized the facts in its new pleading, an inadequate reason to dismiss the suit. Medistar further objects that Defendants "paired 'conclusory' with 'facts,' 'allegations,' 'statements,' or 'assertions' no less than twelve (12) times, but they never defined any of those phrases." #170 at 9. Medistar insists it has provided sufficient, well-pleaded facts to support its statements. It does not have to set out in detail the facts upon which it bases its claims. *Twombly*, 127 S. Ct. at 1965 n.3.

While Defendants argue that the fact that the parties are in appraisal indicates that there is no breach of contract, Medistar responds that Defendants only requested the appraisal after Medistar filed its lawsuit claiming breach of contract. Defendants have denied additional payment to Medistar several times, as alleged, and throughout the negotiations process. The insurance contract stipulates that the appraisal process is voluntary. After the Court appointed an umpire and the parties proceeded with the appraisal process, Medistar filed a motion to abate (#32) the lawsuit pending the outcome of the appraisal, opposed by Defendants, and the Court denied that motion (#37), in essence ordering the parties to proceed with both the appraisal process and this litigation concurrently. Defendants' argument that no breach

of contract occurred when Medistar filed its original petition
should be discarded.

Furthermore the Court should deny those portions of the motion
that require the Court to look beyond the pleadings, such as that
it lacks standing to bring a DTPA claim.[12]

Alternatively, Medistar asks the Court to postpone its
decision on the motion to dismiss until after the appraisal process
finishes, since that process will not necessarily resolve this
dispute.  The policy's appraisal provision, which is one-sided,
states, "If there is an appraisal, we [the Defendants] still retain
our right to deny the claim." #156, Ex. A, Building and Property
Coverage Form, E(2), at 10.  There is no language in the policy
that states that an appraisal award would be binding on the
parties.  If the Court dismisses this action before the appraisal
process is over and Defendants subsequently deny any appraisal
award, the parties will have to restart the litigation process at
a substantial expense of time and money.

Medistar contends that *Breshears*, 155 S.W. 3d 340, is
inapplicable because (1) it dealt with motions for summary
judgment, not Rule 12(b)(6) motions to dismiss; (2) the court

---

[12] Defendants reply that lack of standing is a proper inquiry
on a motion to dismiss. *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th
Cir. 2006)("We may affirm a district court's Rule 12(b)(6)
dismissal on any grounds supported by the record, including a
party's lack of standing.").  Here, however, the Court notes that
there is no evidence in the record to decide the standing
challenge.

abated the lawsuit pending the outcome of the appraisal and thus knew of its outcome and Defendant's subsequent actions before ruling on the parties' motions; and (3) the appraisal provision of the insurance company stipulated that the appraisal award would be binding on the parties.

Finally Medistar argues that because Defendants did not discuss Rule 12(f) and how it applies to the breach of contract claim, their motion to strike must be denied.  Because when Medistar filed this action the parties were not in appraisal, Defendants' argument that the breach of contract claim is not ripe because the parties are now in appraisal should be rejected and the Court should deny the motion to strike.  Indeed there are questions of fact and law that support denial.  The parties disagree over interpretation of the insurance contract and "whether the law allows Defendants to fend off a breach of contract claim by hiding behind a permissive appraisal provision they invoked only after denying supplemental payments to Medistar and after Medistar filed suit."  #170 at 16.

**Defendants' Reply (#177)**

Medistar's Amended Complaint pursuant to Court order substantially altered the first pleadings' allegations.  Moreover, the defense of failure to state a claim is not waived even if it is filed nine months after a responsive pleading is due because Rule

-29-

12(h)[13] allows that defense to be raised in any pleading permitted or ordered under Rule 7(a) or by a motion for judgment on the pleadings, or in the trial on the merits. *Stearman v. C.I.R.*, 436 F.3d 533, 536 n.6 (5th Cir. 2006). The Court agrees that Defendants have not waived their right to raise these arguments.

Other than the meritless waiver argument, the Court finds that Medistar has failed to respond to the substance of Defendants' arguments regarding Liberty Mutual in their motion to dismiss (#156 at 3-10), i.e., that (1) the breach of contract allegations against Liberty Mutual should be dismissed because Liberty Mutual is not a party to the insurance policy; (2) the bad faith allegations should be dismissed because neither Liberty Mutual nor its agents owe a duty of good faith and fair dealing; (3) the Insurance Code/DTPA allegations against Liberty Mutual should be dismissed because there is no contractual relationship and no duty of good faith and fair dealing; and (4) Medistar's prompt payment claims against Liberty Mutual should be dismissed because it is not a party to the insurance policy. Therefore the portion of the motion to dismiss claims against Liberty Mutual should be granted.

Although Medistar argues it is not required to provide detailed facts to support its claims, it is required to plead

---

[13] Rule 12(h)(2) states, "failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion [for judgment on the pleadings] under Rule 12(c); or (C) at trial."

sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and permits the court to determine whether the claims have "facial plausibility." *Iqbal*, 129 S. Ct. at 1949. *See also Twombly*, 127 S. Ct. at 1964-65 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Medistar's failure to present sufficient facts to support each cause of action requires that its allegations against American Economy and Safeco should be dismissed. In particular, Medistar's failure to respond to Defendants' argument that it asserted only conclusory allegations in its breach of contract claim, failed to identify what conduct constituted the breach or what policy provision was breached should result in dismissal of that claim.

Regarding Defendants' reliance on *Breashears*, 155 S.W. 3d at 343, to argue that if an insurer invokes the appraisal provision of the policy and pays the appraised value, as a matter of law there is no breach of contract, the insurance Defendants point out that in *Breashears,* State Farm also waited until litigation had commenced to invoke the appraisal provision. Defendants reiterate that there is no breach of the insurance contract at this time, so

the breach of contract allegations against them should be
dismissed.

Finally Defendants assert that Medistar's failure to respond
to Defendants' arguments about the bad faith allegations, the
Insurance Code/DTPA claims, and the prayer for exemplary damages
should result in dismissal of all these claims.

**Court's Decision**

The Court concludes that it agrees with Defendants that as a
matter of law, Medistar has failed to state a claim against Liberty
Mutual, which is not a party to the insurance policy attached to
the pleadings. Moreover Medistar has made no effort to plead facts
or move to submit any evidence that might preclude dismissal of
Liberty Mutual on the grounds raised by Defendants. Accordingly,
it grants that part of the motion to dismiss the claims asserted
against Liberty Mutual.

While the Court finds that the pleading of the breach of
contract is somewhat deficient in factual particularity under Rule
12(b)(6), this litigation has gone on for almost two years, is far
beyond the pleading stage, at great cost in terms of time and
money, and has involved extensive discovery. It is obvious from
the payments that have been made to Medistar and the invocation of
the appraisal process, which has proved to be quite lengthy, by
Defendants that Medistar suffered substantial damage caused by
Hurricane Ike, and that the insurance dispute is complicated.

Moreover, the Court agrees with Defendants that because the appraisal process is ongoing, currently there is no denial of payment to give rise to breach of contract and breach of duty of good faith and fair dealing.  Thus at present the breach of contract and breach of duty of good faith and fair dealing are not ripe.  If the parties settle their dispute through the appraisal process, those causes of action will not mature.  This Court has jurisdiction only where there is an actual case or controversy, not a potential or hypothetical one.

If the dispute is not so resolved, the Court finds that Medistar, by its inclusion of the time chart of significant claim activities from 2008-09 (Exh. B to the Amended Complaint), filled with detailed facts about the damages investigation and disputed repairs as alleged by Medistar's consultant Donice Axelson, has sufficiently alleged a substantial amount of information about the damage to the property made known to the insurers that might support Medistar's bad faith claim if Defendants contest the appraisal decision.  The Court finds that Medistar has clearly not adequately alleged conduct that would support an award of punitive damages.  The bad faith issue would be better addressed on summary judgment if the parties do not resolve their dispute after the appraisal decision.

Medistar's claim of failure to pay promptly  (within sixty days after the insurer has received all reasonably requested items,

-33-

statements and forms) under Texas Insurance Code section 542.058 does not require additional facts, but is premature under section 542.058(b) because the validity of Medistar's claims is still in litigation in the appraisal process.

The Court agrees with these Defendants that Medistar has failed to plead its DTPA claim with a factual basis for plausibility required by Rule 8, no less the particularity required by Rule 9(b) for its fraudulent inducement allegations.  Instead Medistar's assertions are abstract, formulaic, vague, and conclusory, a bare tracking of the statutory language.

Accordingly, the Court concludes that it will grant the motion to dismiss as a matter of law as to the claims against Liberty Mutual because it is not a party to the insurance contract.  The Court will also grant the motion to dismiss as to claims under the DTPA against American Economy and Safeco, but deny it as to the breach of contract, breach of duty of good faith and fair dealing, and prompt payment violation under the Texas Insurance Code.  The Court will also stay the case.  Furthermore it will require the parties to inform the Court when the appraisal process is complete and what the parties intend to do with the appraisal determination. At that time, if this dispute has not been resolved, one or both sides shall file either a motion for summary judgment and response or cross motions for summary judgment for the Court to determine whether the breach of contract and breach of duty of good faith and

fair dealing claims should proceed to trial.

### Insurance Company Defendants'

### Motion for Partial Summary Judgment (#184)

The insurance company Defendants seek summary judgment on a narrow issue: whether the building owner or the property insurer has the responsibility to make repairs to the building to make it safe for building occupants and passersby.

There is no dispute that the insurance policy, issued by American Economy to Medistar covering the Twelve Oaks Tower, gives American Economy the right to elect among several remedies for covered loss or damage: (1) to pay the value of the lost or damaged property; (2) to pay for the cost of repairing or replacing the property; (3) to take the property at an agreed or appraised value; or (4) to repair, build, or replace the property with other property of like kind and quality. Paragraph E(4)(a) of the Building & Personal Property Coverage Form.

Defendants argue that Medistar, as the building owner, has a duty to repair unsafe conditions at the Twelve Oaks Tower, and that the property insurer, American Economy, has no contractual or extra-contractual duty to perform such repairs. They maintain that American Economy chose the second option in the policy, i.e., to provide payments for repairs that it determined were covered under the policy, and that it made those payments in the total amount of approximately $3,824,957.11 to Medistar so that Medistar could make

-35-

permanent repairs to the damaged property.  Affidavit of Sandy Parker (claims adjuster for American Economy), Exh. 1; Report sent to Medistar's Chief Executive Officer, Monzer Hourani, on October 6, 2009, Affidavit of Sandy Parker, Exh. 2.

Texas law imposes on a building owner the duty to repair unsafe conditions on its property.  *J. Weingarten, Inc. v. Razey*, 426 S.W. 2d 538, 539 (Tex. 1968)("the occupier of premises holds a duty to use ordinary care to keep his premises in a reasonably safe condition for his invitees" or to warn of hazards); *Goldstein Hat Mfg. Co. v. Cowen*, 136 S.W. 2d 867, 873 (Tex. Civ. App.--Dallas 1939, writ dism'd, judgment correct)("The duty to repair and keep in repair, in the absence of a covenant to the contrary, rests upon him who has rightful possession."); *Merchants Bldg. Corp. v. Adler*, 110 S.W. 2d 978, 980-81 (Tex. Civ. App.--Dallas 1937, writ dism'd)("The owner of a building is under an implied duty to keep such place in a reasonably safe condition, and is liable for injuries resulting from known defects, or such as he should have known.").

The property owner cannot avoid that duty by buying insurance and leaving the insurer "to determine the necessity for and extent of repairs; in other words, he or she is still liable for the condition of the building."  Lee Russ and Thomas F. Segalla, 12 *Couch On Insurance* § 176:55 (3d ed. 2010).

Texas law also recognizes that the property insurer has no

duty to make repairs to the property.  The rights of an insured and insurer are controlled by the terms of their insurance policy. *Carlton v. Trinity Universal Ins. Co.*, 32 S.W. 3d 454, 460 (Tex. App.--Houston [14th Dist.] 2000, pet. denied)("A first party claim sounds in contract and thus is determined by the terms of the insurance agreement between the insurer and the insured.").  An insurance policy is a contract, governed by the rules of contract interpretation. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W. 3d 154, 157 (Tex. 2003)("We interpret insurance policies in Texas according to the rules of contract construction.").  In interpreting the contract, courts "focus on the plain, unambiguous language of the insurance policy and the ordinary meaning of the words defining the parties' obligations." *Carleton*, 32 S.W. 3d at 460.

Defendants maintain that here American Economy has an enforceable contractual right to elect a course of action from among the four methods set out in the policy. *See Schaefer*, 124 S.W. 3d at 159 (rejecting policy construction that would "undermin[e] the insurer's right under the policy to choose a course of action"); *Hamby v. State Farm Mut. Auto. Ins. Co.*, 137 S.W. 3d 834, 837 (Tex. App.--Houston [1st Dist.] 2004, pet. denied)(policy provision giving insurer the right to elect to pay the cash value of damaged car and obtain title from the insured was enforceable); 12 *Couch on Insurance* § 176:2 (2010)("A provision

-37-

giving the insurer the option to repair, build, or replace is valid."). American Economy elected to pay for covered repairs rather than to conduct repairs itself, insist Defendants. Affid. of Sally Parker at ¶ 5. An insurer who has made an election is not required to perform alternative actions which it did not elect. *Schaefer*, 124 S.W. 3d at 160 (insurer who elected to repair could not also be required to pay money). Thus Defendants contend that American Economy is entitled to summary judgment that it has no duty to make repairs to make the Twelve Oaks Tower safe for building occupants or passersby.

Nor does American Economy have an extra-contractual duty to perform repairs because an insurer who has exercised a contractual right of election cannot be subject to extra-contractual liability for that election, insist Defendants. *Methodist Hosp. v. Zurich Am. Ins. Co.*, 329 S.W. 3d 510, 525 (Tex. App--Houston [14th Dist.] 2009, pet. denied)(holding that where insurance policy gave the insurer discretion in settling claims, insured could not complain about the manner in which the insurer exercised that discretion nor would extra-contractual duties be imposed on the insurer relating to the exercise of that discretion). Thus Medistar cannot prevail on any contention that American Economy has any obligation in tort or otherwise to provide remedies that it has properly elected not to provide under the policy. The bad faith claims asserted by Medistar cannot create a duty to perform repairs where the contract

gives the insurer the right to select a different option.

**Plaintiff's Response (#206)**

Supported by documentary evidence, in essence in its response Medistar seeks to raise genuine issues of material fact regarding American Economy's election.  While Defendants argue that American Economic elected to pay for repairs, Medistar asserts that its actions indicate that it and its agents participated in, indeed oversaw, authorized, and directed numerous repairs and in the process caused significant damage to the Twelve Oaks Tower.

Pointing out that Defendants selected Parker to act as the General Adjuster on Medistar's claims, Medistar maintains that after Medistar filed its insurance claim immediately following Hurricane Ike, Parker, acting on behalf of Defendants, began directing repair work at Twelve Oaks Towers and spent a substantial amount of money  authorizing remediation work, talking directly to Defendants' third-party contractors, and overseeing and directing repairs.[14]  Medistar cites the following examples.

On behalf of Defendants Parker contacted and directed ACT-Catastrophe-Texas, LLC ("ACT") to cover damaged areas of Twelve Oak Towers with plywood.  Exh. A at ¶ 9; Parker's internal notes of September 21, 2008, Exh. B at ¶ 4.  Parker's internal notes reflect

---

[14]    Affid.   of   Donice   Krueger,   Medistar's   corporate representative, Ex. A at ¶¶ 7-13.  Krueger states that she was hired by Medistar as an independent consultant and "assisted with all aspects of the claim handling and submission of the claim on behalf of Medistar."  *Id.* at ¶ 4.

that she personally contacted a structural engineer, EFI Global, Inc. ("EFI"), to inspect the building and approve the scope of repairs and that she expected EFI would contact her to schedule an appointment to inspect the Twelve Oaks Tower. Exh. B at ¶ 5. These internal notes also demonstrate that Parker authorized ACT to contract with a roofer for an estimate of damages to Twelve Oaks Tower's roof. Exh. B at ¶ 6. On September 23, 2008 she created more internal notes (Exh. C) stating that she had authorized ACT to board up exterior windows and fence off the area below and authorized a 90' boom lift. Exh. C. She hired Meridian Restoration Consultants ("Meridian") to identify in detail the areas of the building that were damaged by moisture during the hurricane. Exh. A at ¶ 10. Parker paid ACT several times for work performed at the Tower. Exh. D, Payments to Act from Parker, including a check dated September 30, 2008 for $43,774.87 and one on December 15, 2008 for $9,324.62. Emails between Parker and Bill Balke ("Balke") of ACT relating to temporary and other repairs and remediation work demonstrate that she performed a directorial role regarding repairs to Twelve Oaks Tower. Exh. E.

Parker also hired TC3 Construction Services ("TC3") to conduct, approve and overseen repairs on the building. Exh. A at ¶ 11. Activity notes prepared by TC3 during the course of its business relating to Twelve Oaks Towers (Exh. F) reflect that on September 30, 2008, at 7:30 a.m., CDT, TC3, Meridian, and Paladin

Construction, hired by Parker to remove and replace damaged
sheetrock at the property, were working at the Twelve Oaks Tower.
Exh. F at AEIC/Medistar 007881; Exh. A at ¶ 13.  TC3's October 2,
2008 activity notes state that TC3 delayed drywall removal on the
floors of the building with asbestos.  Exh. F at AEIC/Medistar
009885.  They also demonstrate that Paul Nilles and Scott Anderson,
employees of TC3, met with Meridian's Johnny Whitted and that
"Johnny tested the drywall on the exterior side of the steel studs
and found that these walls are wet and must be removed as well--the
reason for opening the wall in the first place."  Exh. F at
AEIC/Medistar 007887, 007888.  In turn TC3 and Safeco hired Wiss,
Janney, Elstner Associates, Inc. ("WJE") as an engineering
consultant.  Ex. A at ¶ 12.  WJE, evaluating the results of ACT's
application of plywood over the damaged areas shortly after the
hurricane, in a letter report dated March 26, 2009 (Exh. G) stated
that it had removed fasteners in several areas and found that ACT
had damaged panels when, at Parker's direction, it had placed the
plywood over damaged areas and improperly secured it with
fasteners.  Ex. A at ¶ 12.  The report concluded that up to ten
fasteners could have contacted the prestressing strand nearest to
the panel edge, possibly causing damage to the building.  Exh. G at
AEIC/Medistar 001436.  A February 26, 2009 email from Parker to
Balke advised Balke that Parker's third-party contractors were
"investigating if the tendons of the building were nicked by screws

during the securing of the board up." Exh. E at Act Catastrophe 000080-81. Balke answered that same day, "Sandy you brought [ACT] in, you directed [ACT] as to exactly what was to be done, you over saw [*sic*] the project and hold all responsibility for any and all actions taken. I told you you should have allowed [ACT] to do the board up like we initially proposed but you didn't want to pay for it. Any damage is your fault. Do not attempt to disparage [ACT] in any way of you will hear from [ACT's] attorney." *Id.* at Act Catastrophe 000080.

Defendants further claim that Paladin Construction, hired by Parker to remove and replace damaged drywall, replaced sheetrock only in areas authorized by Meridian. Exh. A at ¶ 13. Parker had hired Meridian to analyze and remediate the areas of Twelve Oaks Tower that were damaged by water and moisture, but Meridan performed incompetently, resulting in moisture remaining in the building that caused steel beams to rust and fireproofing material to delaminate. Exh. A at ¶ 13. The fireproofing material, which became wet in the hurricane, encapsulated asbestos-containing fireproofing material. Meridian's failure to properly map all areas damaged by water resulted in delamination of the asbestos-containing fireproofing material, which gave rise to an uncontrolled release of asbestos in the Twelve Oaks Tower. *Id.*

In addition, WJE removed ceiling tiles and photographed some of the delaminated fireproofing material. Exh. A at ¶ 14.

Medistar urges that WJE knew or should have known that these tiles could not be removed because they were necessary to prevent the release of asbestos; instead Defendants should have had a certified asbestos abatement contractor set up an asbestos containment area. *Id.*

Although the policy promises to "do everything we can to get you and your business back on track as quickly as possible," it has been over two years since the hurricane and the Twelve Oaks Tower is still far from being where it was before the storm. Defendants' action have hurt Medistar and prevented it from getting back on track as quickly as possible.

In sum, Medistar charges that Defendants have the responsibility to finish the job begun, performing repairs in a safe manner and not leaving the Twelve Oaks Tower in an unsafe condition, because Defendants have repaired, rebuilt or replaced some of the damaged property with other property of like kind and quality. Medistar relied on Parker's actions as evidence that Defendants intended to choose to repair, rebuild or replace the property with other property of like kind and quality. Defendants should not be permitted to object to Medistar's attempts to fix what Defendants and their contractors have damaged. Medistar is not responsible for any damage caused by Defendants' agents, including their contractors. *See, e.g.*, January 30, 2009 letter from Monzer Hourani, CEO of Medistar, to Parker, Exh. H. Moreover,

Defendants should either perform the rest of the repairs or pay for the remaining damage so that Medistar can hire the appropriate contractors to repair the building.  Medistar has raised genuine issues of fact as to whether Defendants are responsible for the damages caused by Defendants' vendors and contractors as well as for a breach of the insurance contract.

**Court's Decision**

After reviewing the record the Court agrees that the insurance contract governs the parties' duties here and that there are genuine issues of fact precluding the partial summary judgment on Defendants' election and the parties' responsibilities relating to the damage.

**ORDER**

Accordingly, for the reasons indicated above, the Court ORDERS the following:

(1) Medistar's motion to set hearing (#174) is DENIED;

(2) Defendants' motion to dismiss (#156) is GRANTED as to the claims against Liberty Mutual and the DTPA claims against American Economy and Safeco, but DENIED in all other respects;

(3) Defendants' motion to strike (#156) is MOOT;

(4) Defendants' motion for partial summary judgment (#184) is DENIED; and

(5) The case is hereby STAYED, pending a decision from

the appraisal process; the parties shall timely inform the Court (a) when the appraisal process has been completed and (b) what they intend to do with regard to the decision;

(6) if they have not resolved their dispute, one or both sides shall file within twenty days a motion for summary judgment.

**SIGNED** at Houston, Texas, this _27th_ day of _July_, 2011.

_____

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-45-